PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1831
_____

T MOBILE NORTHEAST LLC,
Appellant

v.

CITY OF WILMINGTON, DELAWARE;
CITY OF WILMINGTON ZONING BOARD OF ADJUSTMENT
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-16-cv-01108)
District Judge:  Hon. Eduardo C. Robreno
_____

Argued
September 12, 2018

Before:  JORDAN, NYGAARD, and VANASKIE,[*] *Circuit Judge*
(Filed: January 10, 2019)

_____

[*] The Honorable Thomas I. Vanaskie retired from the Court on January 1, 2019 after the argument and conference in this case, but before the filing of the opinion.  This opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and Third Circuit I.O.P. Chapter 12.

Thomas S. Thompson   [ARGUED]
Davis Wright Tremaine
1919 Pennsylvania Avenue, NW
Ste. 800
Washington, DC   20006

*Counsel for Appellant*

Joseph Van Eaton   [ARGUED]
Best Best & Krieger
2000 Pennsylvania Avenue
Ste. 5300
Washington, DC 20006

*Counsel for Appellees*

OPINION OF THE COURT

JORDAN, *Circuit Judge*.

No one likes bad cell phone reception or slow streaming data on their smartphone, but that does not mean anyone wants a cellular antenna in their neighborhood, which is why there are zoning battles like the one central to this case.

T Mobile Northeast LLC ("T Mobile"), a wireless telecommunications service provider, applied to the Zoning Board of Adjustment ("ZBA") of the City of Wilmington, Delaware for permission to erect an antenna in the City. The

ZBA said no.  So, relying on a provision of federal law that allows a disappointed wireless service provider like T Mobile to seek review in a district court "within 30 days after" a zoning authority's "final action," 47 U.S.C. § 332(c)(7)(B)(v), T Mobile filed suit.  After the case had proceeded for over a year, however, the District Court concluded that it lacked jurisdiction.  The Court reasoned that because T Mobile filed its complaint before the ZBA released a written decision confirming an earlier oral rejection of the zoning application, the claim was not ripe.  And, since T Mobile did not supplement its complaint to include the ZBA's written decision within 30 days of its issuance, the Court also concluded that relation back could not remedy the ripeness defect.  The District Court thus granted the City's motion for summary judgment.

T Mobile now appeals.  It argues that its complaint was not premature or, in the alternative, that its supplemental pleading cured any ripeness problem.  We agree that the grant of summary judgment was improper and, for the reasons that follow, will remand the case for further proceedings consistent with this opinion.

## I.     BACKGROUND

### A.     Statutory Framework

This dispute is governed by the Telecommunications Act of 1996 ("TCA"), which amended the Federal Communications Act of 1934 and includes provisions on mobile phone services.  Pub. L. No. 104-104, §§ 1, 704, 110 Stat. 56, 56, 151 (1996); 47 U.S.C. § 332.  Passed to "encourage the rapid deployment of new telecommunications

3

technologies," Preamble, 110 Stat. at 56, the TCA provides for expedited review in federal court of a denial of permission to build a cell phone antenna, *id*. § 704, 110 Stat. at 151-52. Such review is a "benefit Congress expressly intended to confer on wireless providers[.]" *Nextel W. Corp. v. Unity Twp.*, 282 F.3d 257, 264 (3d Cir. 2002). At the same time, the TCA also serves to preserve local zoning authority. 47 U.S.C. § 332(c)(7).

At issue here are three key sections of the statute. First, the TCA mandates that "[a] State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed[.]" *Id*. § 332(c)(7)(B)(ii). The Federal Communications Commission ("FCC") has interpreted "reasonable period of time" in that statutory provision to mean that zoning authorities have a "shot clock"[1] and must act within 90 days of an application to attach an antenna to an existing structure or 150 days of an application where a new support structure is to be built. *Petition for Declaratory*

---

[1] "Shot clock" is a term borrowed from basketball. In that game, it signifies a time limit to make a shot attempt, beginning once a team has possession of the basketball. *See, e.g.*, Nat's Basketball Ass'n, NBA Rulebook Rule No. 7: Shot Clock (2018-2019), http://official.nba.com/rule-no-7-24-second-clock/. If the team has not made a shot attempt, i.e., acted, within the prescribed time limit, it forfeits possession of the ball. *Id*. Here, the permitting authority has exclusive jurisdiction over an application until it fails to act within a "reasonable period of time." 47 U.S.C. §§ 332(c)(7)(A), 332(c)(7)(B)(ii).

4

*Ruling to Clarify Provisions of Section 332(c)(7)(B)*, 24 FCC Rcd. 13994, 14008, 14012 (2009). Second, in what we will call the "review provision" of the statute, the TCA grants "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof" a right to have that locality's decision reviewed by "commenc[ing] an action" "within 30 days" in district court. 47 U.S.C. § 332(c)(7)(B)(v). Third, in the statute's "denial provision," the TCA states that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." *Id*. § 332(c)(7)(B)(iii). Notably, the terms "act," "final action," and "decision … to deny" are not defined in the TCA. Furthermore, the statute does not make clear whether "final action" should be read to encompass all decisions to deny, including oral ones, nor does it address whether there is a difference between an "act" for purposes of the shot clock and a "final action" for purposes of judicial review.

### B.      Factual Background

T Mobile is a telecommunications service provider. It says that it needs to erect a cellular antenna to fill "a significant gap" in coverage for its customers in Wilmington, Delaware, (Opening Br. at 3) presumably where there has been an increase in phone calls and data usage. T Mobile wants to put its antenna on top of a senior living high-rise in the City, but, because a special exception to local zoning laws is needed, it first had to go to the ZBA. It filed an initial application and then, on August 25, 2016, a final amended application, seeking the exception.

5

The ZBA held a hearing on October 26, 2016, to consider T Mobile's request, some two months after the final amended application was submitted. During the hearing, T Mobile presented evidence of the need for the antenna and discussed proposals to address aesthetic concerns. The ZBA also received objections from members of the local community, some of whom were outspoken in worrying about the effects of radio frequency emissions. At the end of the hearing, the ZBA denied T Mobile's application in a unanimous oral decision.

The Board gave several reasons for the denial. One board member said the ZBA should not encourage the use of a senior living community rooftop as the base for an antenna because of the potential adverse effect on the properties in the neighborhood. Another board member said there was not enough proof of a need for additional coverage to support the application. The Chairman said there was not enough evidence that T Mobile needed the antenna and that it did not appear to satisfy the zoning code in terms of placement and height restrictions.

The ZBA's oral decision to deny the application was not put in writing on October 26 or anytime soon thereafter. According to T Mobile, that fits a "pattern and practice of [the ZBA] not issuing a written decision of land use denials unless or until the City is sued." (Opening Br. at 7.) Only after T Mobile had filed its initial complaint in the District Court, and after the City filed its answer, did the ZBA issue its written decision and explanation of its reasoning for denying the application.

6

T Mobile asserts that the denial of its application violates the TCA. Under the statute, such a denial is invalid if it has the "effect of prohibiting the provision of personal wireless services[,]" 47 U.S.C. § 332(c)(7)(B)(i)(II), or is "on the basis of the environmental effects of radio frequency emissions[,]" *id*. at § 332(c)(7)(B)(iv). T Mobile claims that Wilmington's denial was improper on both of those grounds.[2] But those assertions go to the merits and are not actually before us on this appeal. At issue now is whether T Mobile's claim can be heard at all.

## C. Procedural History

Evidently with its eye on the 30-day deadline in the TCA's review provision, T Mobile filed a lawsuit in the United States District Court for the District of Delaware within 30 days of the ZBA's oral decision, challenging that denial.[3] In addition to its claims on the merits, T Mobile's initial complaint alleged that the City violated procedures mandated in the TCA, specifically those in the denial provision, by failing to provide a written decision

---

[2] T Mobile also raised a Delaware state law claim. That claim is not at issue here and does not impact T Mobile's claims under federal law.

[3] For reasons discussed herein, the 30-day filing deadline was not triggered by the oral decision. *See infra* pp. 12-20. If it were, however, T Mobile's complaint would have been timely. The oral decision was delivered at the October 26, 2016 hearing. Suit was filed on November 28, 2016, but because the thirtieth day from October 26 fell on a weekend, the November 28 filing was within the 30-day window. Fed. R. Civ. P. 6(a)(1).

contemporaneous with its oral decision and by not supporting the denial with substantial evidence.

The parties entered into a stipulation asking the District Court for an expedited case schedule, as provided for in the review provision of the TCA. 47 U.S.C. § 332(c)(7)(B)(v). That request was granted. Wilmington then answered the complaint, asserting a number of affirmative defenses, including that the complaint was not ripe because the ZBA had not yet issued a final written decision. Nevertheless, the City did not, at that time, file a motion to dismiss for failure to state a claim or for lack of jurisdiction. Two days after the City filed its answer, the ZBA issued a written decision on T Mobile's application. The parties pressed forward with the suit and prepared a discovery plan, which specifically mentioned the written decision. T Mobile filed a motion for summary judgment, which the City met with a cross-motion for summary judgment. The City's motion was styled in the alternative as a motion to dismiss the complaint as unripe because it was filed prematurely, i.e., before the written decision had been issued.

Not until December 21, 2017, nearly a year after the ZBA issued its written denial, did T Mobile file a motion seeking leave to amend or supplement the initial complaint to note the issuance of that written decision.[4] The District Court

_____

[4] When "[a] claim or defense set out in a pleading [is] affected by events that occur after the pleading is filed …. Rule 15(d) allows a court," to permit a supplemental pleading. 3 James Wm. Moore et al., *Moore's Federal Practice* ¶ 15.30 (3d ed. 2018). Supplemental pleadings

8

granted the motion to supplement. Wilmington then responded by moving to dismiss the supplemental complaint as untimely because it failed to cure the defect.

Ultimately, the District Court granted Wilmington's cross-motion for summary judgment for want of jurisdiction, without ruling on the City's motion to dismiss. The Court first concluded that the initial complaint was irreparably unripe because both the TCA and Delaware law require the ZBA to issue a written decision before the agency's action could be considered final, and T Mobile had thus filed its initial complaint too soon. Second, the Court said that the supplemental complaint could not fix the ripeness problem because it was filed past the 30-day window for seeking review of the ZBA's final action. Because the Court reached

---

under Rule 15(d) differ from amended pleadings made under Rule 15(a). First, amended pleadings "relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading; [supplemental pleadings] deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings." 6A Charles Alan Wright et al., *Federal Practice & Procedure* § 1504 (3d ed. 2018). Second "certain amendments may be made as a matter of course within stated time periods, whereas all supplemental pleadings require leave of court under Rule 15(d)." *Id*. "Parties and courts occasionally confuse supplemental pleadings with amended pleadings and mislabeling is common." *Id*. Here, T Mobile's complaint was filed as an amended complaint but it is properly categorized as a supplemental complaint, and we will refer to it as such herein.

that determination, it found it unnecessary to conclude whether T Mobile's supplemental complaint was entitled to the benefit of the relation-back doctrine under Rule 15(c).

This appeal followed.

## II.   DISCUSSION[5]

T Mobile challenges the District Court's grant of summary judgment in favor of Wilmington, contending that there is jurisdiction to hear its case.  It advances two alternative grounds for reversal: that its complaint was ripe because the ZBA's oral decision qualifies as a "final action" under the review provision of the TCA, and, in the alternative, that the supplemental complaint relates back to and cures any ripeness problem with its initial complaint. Those arguments in turn raise three questions for determining whether the District Court's jurisdictional ruling was proper. First, whether the oral decision of the ZBA was a final action. Second, whether the timing requirement in the TCA's review provision is jurisdictional.  And third, whether an untimely

---

[5]   The District Court had jurisdiction to consider its jurisdiction under 28 U.S.C. §§ 1331 and 1367(a), but determined the complaint contained incurable jurisdictional defects and declined to reach the merits.  We have jurisdiction pursuant to 28 U.S.C. § 1291.   We review all the issues presented in this case *de novo*, as they involve only legal issues, i.e., interpretation of a federal statute and of a Federal Rule of Civil Procedure.  *Giles v. Campbell*, 698 F.3d 153, 155 (3d Cir. 2012); *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011); *DIRECTV Inc. v. Seijas*, 508 F.3d 123, 125 (3d Cir. 2007).

supplemental complaint can relate back and cure an unripe initial complaint. Although we disagree with T Mobile that an oral decision of the ZBA qualifies as a "final action," we agree that jurisdiction was proper in the District Court because the timing requirement in the TCA's review provision is non-jurisdictional, and T Mobile's supplemental complaint therefore relates back and cures the ripeness problem with the initial complaint. The District Court should thus have reached the merits of the dispute.

### A. The Oral Decision Was Not a Final Action of the ZBA.

The ripeness of T Mobile's initial complaint depends upon whether the ZBA's oral decision was a "final action" within the meaning of the TCA. Consideration of that issue uncovers another: whether the TCA requires a locality to render its decision in writing for that decision to qualify as a final action. The District Court held that, under both federal and Delaware law, only a written decision can serve as a final action of the ZBA. Because traditional hallmarks of agency action and the statutory text and structure of the TCA favor that approach, we agree that only a written decision can serve as a locality's final action when denying an application.

In *Delaware Riverkeeper Network v. Secretary Pennsylvania Department of Environmental Protection*, *(Riverkeeper III)*, we determined that, when reviewing finality under the Natural Gas Act, "[a]lthough the decisionmaking process we are reviewing is defined by [state] law, we nevertheless apply a federal finality standard to determine whether Congress has made the results of that process reviewable[.]" 903 F.3d 65, 72 (3d Cir. 2018). The

11

same reasoning holds true here, since, for the TCA just as for the Natural Gas Act, "the finality requirement itself, along with the presumption that Congress intended us to apply it, are creatures of federal, not state, law." *Id.* at 71.

Under federal law, not all agency determinations are final actions. *Bacon v. Sullivan*, 969 F.2d 1517, 1519 (3d Cir. 1992). Final agency actions bear certain "traditional hallmarks" that demonstrate "[t]here is nothing left for the agency to do[,]" *Del. Riverkeeper Network v. Sec'y of Pa. Dep't of Envtl. Prot.*, (*Riverkeeper II)*, 870 F.3d 171, 178 (3d Cir. 2017). We noted those hallmarks on an earlier occasion when we said that, "[f]inal agency action must mark the consummation of the agency's decisionmaking process, must not be of a merely tentative or interlocutory nature, and must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Riverkeeper III*, 903 F.3d at 72, 75 (citation and internal quotation marks omitted).

To decide what the TCA requires for finality, we begin, of course, with the text. *See, e.g.*, *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) ("Statutory interpretation … begins with the text[.]") Here, the statutory text makes it clear that, if a denial is not in writing, there is something left for the agency to do. The denial provision of the TCA states that "[a]ny decision … to deny … shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). We see no reason why the same should not be true for actions besides denial,[6]

---

[6] For instance, it is not apparent why community members aggrieved by a decision to grant some permit to a

12

but we need not decide that today.  It is enough to say that, in those zoning decisions governed by the TCA, a locality's oral declaration of a denial is "of a merely tentative or interlocutory nature."  *Riverkeeper III*, 903 F.3d at 72 (citation omitted) (speaking in reference to the Natural Gas Act); *cf. Athens Cellular, Inc. v. Oconee Cty.*, 886 F.3d 1094, 1104-05, 1107 (11th Cir. 2018) (noting that a zoning board could have approved the minutes, revised them, or rejected them, and thus until the board approved the minutes its decision was not final).

Moreover, an oral decision is not an action from which legal consequences flow.  Federal law governs finality, but Delaware's procedures still matter, and the Delaware Superior Court has concluded that a written document must be filed for a ZBA action to be final. *McDonald's Corp. v. Zoning Bd. of Adjustment for the City of Wilmington*, No. CIV. A. 01A-05-011CG, 2002 WL 88944, at *1 (Del. Super. Ct. Jan. 10, 2002).  The court reasoned that Section 328 of Title 22 of the Delaware Code, the section that governs appeals from ZBA proceedings, requires a written document to be filed because the statute "provides that [s]uch petition shall be presented to the Court within 30 days *after the filing of the decision in the office of the board*."  *Id.* (internal quotation marks omitted).  That reasoning is persuasive and

wireless provider, assuming those members have standing to sue, would not be equally entitled to a zoning authority's written decision before the time limit in the TCA's review provision is triggered.

shows that, under Delaware law, the ZBA's oral decision is without legal consequences.[7]

There are distinct policy advantages to forestalling judicial scrutiny until a written denial is issued. Requiring a written decision focuses review on a particular, documented statement of reasons. *See USCOC of Greater Mo. v. City of Ferguson*, 583 F.3d 1035, 1042 (8th Cir. 2009) ("Because the written decision is the central object of our scrutiny under the TCA, the process of judicial review is best served by delaying the ripening of a TCA claim until the local authority has issued its written decision."). It also prevents ambiguity with respect to when a claim can be brought. As the District Court here stated, to hold otherwise "would promote a pernicious ambiguity as to when that short period of time begins to run." (App. at 7.) And it promotes uniformity of federal procedures by clarifying when, across all jurisdictions, an action becomes final.

---

[7] T Mobile cites to a different opinion, *Schmalhofer v. Board of Adjustment of Newark*, to advance a contrary position. No. C.A. 99A-05-010-WTQ, 2000 WL 703510 (Del. Super. Ct. May 9, 2000). *Schmalhofer* states in a footnote that "a written decision is not required or expressly contemplated by this section." *Id.* at *3 n.3. But T Mobile is stretching the *Schmalhofer* court's language too far. In that case, the City of Newark had issued a verbatim transcript of the hearing, so there was a writing. *Id*. at *3; *see infra* note 11. There is no indication of any written decision in this case, prior to December 22, 2016, when the City issued the written denial bearing the date of December 21, 2016.

14

The Supreme Court's decision in *T-Mobile South, LLC v. City of Roswell, Georgia*, also adds support to the conclusion that only a written denial can constitute final action, triggering a party's right to review. 135 S. Ct. 808 (2015). In that case, the Court held that the "substantial evidence" supporting a locality's decision to deny must be released contemporaneously with the written decision to deny.[8] *Id.* at 811-12. In doing so, the Court tied together a local zoning authority's final action, which triggers judicial review, and its decision to deny, which must be in writing. Indeed, the Supreme Court said in no uncertain terms that, "[t]he relevant 'final action' [in that case, was] the issuance of the written notice of denial[.]" *Id.* at 817 n.4. The Court linked the locality's decision to deny to the 30-day time limit to file a complaint after a final action has been taken. *Id.* at 817 ("Only once the denial is issued would the 30-day commencement-of-suit clock begin."); *id.* at 813 ("[N]ow 29 days after the City denied petitioner's application—petitioner filed suit in Federal District Court.").

The Court went on to discuss timing, saying, "the locality must provide or make available its written reasons at essentially the same time as it communicates its denial[,]" "[b]ecause an entity may not be able to make a considered

_____

[8] The Court was interpreting the denial provision, which, as we noted earlier, states that, "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii), *City of Roswell*, 135 S. Ct. at 811.

decision whether to seek judicial review without knowing the reasons for the denial of its application, and because a court cannot review the denial without knowing the locality's reasons[.]" *Id.* at 816. The majority opinion was critical of the dissent for attempting to "fashion a world in which a locality can wait until a lawsuit is commenced and a court orders it to state its reasons[,] … [leaving the challenging entity to] risk being sandbagged by the written reasons that the locality subsequently provides in litigation after the challenging entity has shown its cards." *Id.* at 816 n.3. That critique is premised on the written decision being the final action that starts the 30-day time limit for commencing suit.[9]

The Supreme Court anticipated that localities might need to delay issuing a written denial if they are not ready to release their substantial reasons. *See id.* at 817 (noting that

---

[9] T Mobile asserts that Wilmington has a "pattern and practice of not issuing a written decision of land use denials unless or until the City is sued." (Opening Br. at 7.) But if only a written denial is a final action, the shot clock requires the City to issue that written decision within a given time period. 24 FCC Rcd. 13994, 14012 (2009). T Mobile also asserts that when a locality has a pattern and practice of not releasing written decisions, that practice delays the overall process, since a cellular service provider would be required to initiate two causes of action: one to compel a written decision and another to challenge that written decision. That, however, is precisely what Congress envisioned by providing separate remedies for a failure to "act" within a reasonable time period and for an improper denial. 47 U.S.C. § 332(c)(7)(B)(iii).

"[i]f a locality is not in a position to provide its reasons promptly, the locality can delay the issuance of its denial within this 90– or 150–day window, and instead release it along with its reasons once those reasons are ready to be provided."). That further counsels against treating an oral determination as a final action since, if an oral determination is deemed a final action, localities will be unable to take advantage of the permissible delay afforded by the shot clock for publishing their reasoning.

Two of our sister courts of appeals agree that only a written decision can constitute final action. The Eighth Circuit in *USCOC of Greater Missouri v. City of Ferguson* stated that "[t]he plain language of the TCA indicates that 'final action' does not occur until issuance of a written decision." 583 F.3d at 1041. The Eleventh Circuit in *Preferred Sites LLC v. Troup County* likewise held a complaint to be timely when it was filed within 30 days of a written decision, even though it was filed more than 30 days after an oral decision.[10] 296 F.3d 1210, 1217-18 (11th Cir.

---

[10] T Mobile attempts to distinguish *Preferred Sites* by stating that, unlike here, the case did "not address a city that does not issue a written decision close in time to when it makes the decision to deny." (Opening Br. at 37.) But that argument is irrelevant to whether the statutory text requires a writing for an agency decision to be final. T Mobile also cites to *Preferred Sites* to argue that it should not matter if there is a writing requirement since the oral denial could be seen as akin to a court announcing a decision. It explains that "when an appeal is filed after the court announces a decision, but before the entry of the judgment, it is treated as being filed on the date of entry." (Opening Br. at 28-29 (citing *Preferred*

17

2002) (concluding that, "[b]ased on the plain language of the statute," that "a 'final action' occurs when the state or local authority issues its written decision. The statute expressly mandates a … decision … committed to writing. Until the state or local authority issues its written notification, its task under the statute is not complete."). No circuit has held otherwise.

Persuasive authority thus indicates that any action, and certainly a denial, must be in writing to be final. But, there is another possible interpretation of the statutory text. The words "shall be in writing" could be read not as a condition of finality, but instead as a simple directive to state and local governments to place their final action in writing. "The TCA provides no express answer to … when a local government's permitting decision becomes a 'final action,' which starts the thirty-day clock." *Athens Cellular*, 886 F.3d at 1102-03. The statute only states that denials must be in writing. 47 U.S.C. § 332(c)(7)(b)(iii). Decisions to grant are not limited in the same way. *Id*. And, Congress used the words "decision to deny" in one statutory subsection and "final action" in another, which could evince an intent to give those terms different meanings. As the Supreme Court has "recognized … Congress's use of certain language in one part of the statute and different language in another can indicate that different meanings were intended." *Sebelius v. Auburn Reg'l Med. Ctr*., 568 U.S. 145, 156 (2013) (citation and quotation

_____

*Sites*, 296 F.3d at 1217 n.7).) That analogy did appear in *Preferred Sites*, but it was only contained in a footnote. No other court has followed that line of reasoning, and we decline to follow it here.

marks omitted). Thus, it could be argued, if Congress wanted to mandate a writing for zoning denials to constitute final action, it could have been more explicit, providing, for instance, that a "decision must be in writing to qualify as a final action."

But, of course, one can almost always fault legislative drafting, like other kinds of writing, after the fact. That something might have been said even more clearly does not mean it is not clear enough. So, "[r]ather than expecting (let alone demanding) perfection in drafting," we can "construe[] statutes to have a particular meaning even as we acknowledge[] that Congress could have expressed itself more clearly." *Torres v. Lynch*, 136 S. Ct. 1619, 1633 (2016).

The text and structure of the statute, Delaware procedures, Supreme Court reasoning, our sister circuits' decisions, and policy arguments all support the conclusion that a writing is in fact a requirement for a denial to be final.[11] In light of that conclusion, the ZBA's oral determination on

---

[11] What constitutes a "writing" has some flexibility, though. *See, e.g.*, *Omnipoint Holdings, Inc. v. City of Southfield*, 355 F.3d 601, 605-07 (6th Cir. 2004) (approving minutes by written resolution was a final action that bound the parties). In *City of Roswell*, for example, the Supreme Court indicated that minutes of an oral meeting could be sufficient. 135 S. Ct. at 816. Here, however, there is no evidence that the ZBA's oral determination was noted in the minutes of the October 26th meeting and issued by the City as its formal decision.

19

October 26, 2016, was not a final action ripe for judicial review.  Therefore, as that oral determination was not reduced to writing until December 22, 2016, preceding the filing of T Mobile's initial complaint, that complaint's cause of action was not ripe.

## B. No Separate Time Limit Exists Following an Oral Determination.

As an alternative to its argument that the ZBA's oral decision was a final action, T Mobile asks us to consider whether a "local government must issue the 'writing' close in time to the 'decision … to deny' to establish a 'final action' that will be subject to expedited review."[12] (Opening Br. at 41.) Essentially, T Mobile is asserting that the "shot clock" governing the time to act, which allows a wireless carrier to sue for a locality's failure to act, is insufficient, and that a new requirement, albeit not in the statute, should be imposed on localities. Under T Mobile's proposed rule, an oral decision would have to be reduced to writing within a specified time period. That argument assumes that an oral determination can serve to satisfy the requirement to "act" on a request within the limits of the shot clock, and that, without a separate judicially created time limit, there would be no deadline for the locality to release its written decision to deny, despite *City of Rowell*'s contemporaneous writing requirement. Because we conclude that a denial must be in writing to be a final action, the issuance of that writing is the government "act" ruled by the shot clock.[13] Aside from the

---

[12] Wilmington argues that T Mobile has waived that issue, but we need not address that argument because we conclude that no such requirement exists.

[13] Again, the Supreme Court held in *City of Roswell* that a locality's decision to deny must be accompanied by substantial reasons. 135 S. Ct. at 811-12. Otherwise, if a locality were able to withhold its reasoning for its decision, those aggrieved by the locality's actions would "be left to

21

time limits associated with the "shot clock," there is no other deadline governing the issuance of a written decision following an oral determination. 47 U.S.C. § 332(c)(7)(b). Any time limit we fabricated would be inappropriate.

T Mobile argues that, without a requirement for localities to issue a written decision within a set amount of time following an oral determination, wireless carriers are left "to wait until the FCC 'shot clock' expires – which could be 90 or 150 days depending on the type of installation involved – and then [to] file an action alleging that the City has failed to act in a reasonable time[.]" (Opening Br. at 45.) It also contends that a "failure to act" lawsuit is insufficient because the remedy for a successful suit is simply an order telling the City to issue a written decision. In T Mobile's view, forcing wireless providers to sue both to compel a written decision once the shot clock is violated and again to contest the written decision serves only to "create yet further delay." (Opening Br. at 46.)

---

guess at what the locality's written reasons will be, write a complaint that contains those hypotheses, and risk being sandbagged by the written reasons that the locality subsequently provides in litigation after the challenging entity has shown its cards." *Id*. at 816 n.3. If an applicant cannot file suit, however, because the locality's "final action" has not yet occurred, those concerns vanish. The ZBA's decision here, when reduced to writing, was both its decision to deny and its final action.

22

Those concerns are overstated and, in any case, irrelevant. The shot clock begins to run once a wireless provider files its application, so it is already ticking before any oral decision is made. If the locality fails to meet that deadline by not issuing a written decision before the shot clock expires, the wireless provider can bring a claim for a "failure to act."[14]  24 FCC Rcd. 13994, 14012 (2009). T Mobile asserts that requiring a separate failure-to-act suit, in addition to a suit on the merits, undercuts the statutory purpose of expedited judicial review, particularly in cases where the locality has a "pattern and practice of not issuing a written decision of land use denials unless or until [it] is sued." (Opening Br. at 7.) But the statute's own remedies cannot possibly undercut its purpose. A separate failure-to-act claim is the very remedy Congress chose for shot clock violations. 24 FCC Rcd. 14013 at ¶ 4 (2009). Whether or not T Mobile likes that policy choice, it is the one Congress made, and we are not free to change it.

### C.  The Timing Requirement Is Not Jurisdictional.

Because we hold that a writing is required for a denial to constitute a final action, T Mobile's initial complaint was not ripe for review when filed. And, T Mobile's supplemental complaint was filed more than 30 days after the ZBA issued its written decision and was therefore untimely under the TCA's review provision. 47 U.S.C. § 332(c)(7)(B)(v). Thus, the District Court only had jurisdiction if T Mobile's supplemental complaint cured the

---

[14] It is not clear which time limit would have applied in this case and whether it would have been violated.

23

ripeness flaw in its initial complaint by relating back to the original filing date. If the 30-day time limit in the TCA's review provision is nonjurisdictional, we can safely say that relation back is possible and allows a supplemental complaint to cure a defective premature filing.[15] At the outset, then, we must determine whether that 30-day time limit is jurisdictional, being mindful both of the Supreme Court's counsel to exercise caution before holding timing requirements to be jurisdictional and of its guidance regarding what constitutes a jurisdictional limit.[16] *Sebelius*, 568 U.S. at 149, 153-54. Caution is indeed warranted because statutes of limitations and other filing deadlines "ordinarily are not jurisdictional." *Id*. at 154; *see also United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015) ("[M]ost time bars are nonjurisdictional.").

---

[15] We do not reach the issue of whether an unripe complaint can be cured by a supplemental or amended pleading over which the Court lacked jurisdiction.

[16] The City claims that our decision in *Nextel Partners Inc. v. Kingston Township*, 286 F.3d 687 (3d Cir. 2002) is effectively determinative. Not so. In *Kingston Township*, then-Judge Alito noted that the District Court had held the timing requirement in the TCA's review provision was jurisdictional. *Id*. at 695. But we did not address whether that determination was correct, nor did we rely on it. Instead, we concluded that there could be no "failure to act" towards an application that was not submitted. *Id*. at 692. Since our decision in that case, the Supreme Court has clarified the process for determining if a time limit is jurisdictional. *Sebelius*, 568 U.S. at 149.

24

"[T]o ward off profligate use of the term 'jurisdiction,' [the Supreme Court has] adopted a readily administrable bright line for determining whether to classify a statutory limitation as jurisdictional." *Sebelius*, 568 U.S. at 153 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006)) (quotation marks omitted). We are to ask "whether Congress has clearly state[d] that the rule is jurisdictional; absent such a clear statement, we … should treat the restriction as nonjurisdictional in character." *Id.* (alteration in original) (citation and quotation marks omitted); *see also Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) (Thus, "[w]e treat a time bar as jurisdictional only if Congress has 'clearly stated' that it is."). In deciding whether Congress has made such a clear statement, "we evaluate the 'text, context, and relevant historical treatment.'" *United States v. Kalb*, 891 F.3d 455, 460 (2018) (quoting *Reed Elsevier*, 559 U.S. 154, 166 (2010)).

Referencing that last test, Wilmington asserts that "[s]ection 332's statutory grant of jurisdiction to district courts, the text of the statute, the placement of the filing window in that same section, and the well-established treatment of the filing window as jurisdictional, [all demonstrate] that the filing window is jurisdictional." (Answering Br. at 15.) We disagree. The differences between the review provision's timing requirement and the timing requirement we held to be jurisdictional in *Kalb*, and the similarities between the review provision's timing requirements and those at issue in *Sebelius* and *Musacchio*, which the Supreme Court held to be nonjurisdictional, actually support treating the timing requirement in the TCA's review provision as nonjurisdictional.

First, although Wilmington says that the text of the statute indicates Congress's desire to make the 30-day timing requirement jurisdictional, the text does not use the term "jurisdictional" or any variation of it to describe the timing requirement. 47 U.S.C. § 332(c)(7)(B)(v). To the contrary, the statute uses permissive rather than mandatory language. Unlike the timing requirement we held to be jurisdictional in *Kalb*, which mandated that an action would be barred if not filed in time, the TCA's review provision states that an action "may" be filed within 30-days. *Compare Kalb*, 891 F.3d at 460 *with* 47 U.S.C. § 332(c)(7)(B)(v). The language is much closer to that which the Supreme Court decided was nonjurisdictional in *Sebelius*. The statute at issue in that case, like the review provision here, uses a permissive phrase – "may obtain a hearing" – before it states the timing requirement.[17] *Compare Sebelius*, 568 U.S. at 154, *with* 47 U.S.C. § 332(c)(7)(B)(v) ("may … commence an action"). Similar to the timing requirement the Supreme Court held to be nonjurisdictional in *Musacchio*, the review provision does not confer jurisdiction, instead it allows an action to be

---

[17] T Mobile also points to *Henderson v. Shinseki*, which held a timing requirement to be nonjurisdictional even though it used the mandatory "shall" before stating the timing requirement. 562 U.S. 428, 441-42 (2011). But the decision in *Shinseki*, where the pertinent timing requirement could have barred a veteran's appeal, was partly based on "the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor," and so it is of less utility in deciding this dispute. *Id.* at 441 (quotation marks and citations omitted).

commenced "in any court of competent jurisdiction." *See Musacchio*, 136 S. Ct. at 717 ("[The provision] does not expressly refer to subject-matter jurisdiction or speak in jurisdictional terms."). The text of the statute therefore favors a holding that the timing requirement is nonjurisdictional.

Wilmington next contends that the context of the timing requirement favors the view that the requirement is jurisdictional, because the Supreme Court has stated that it is "inextricably linked to … the language that creates the right of action[.]" (Answering Br. at 13-14 (citing *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 125 (2005)).) Thus, says the City, the "filing window created by [the review provision] is jurisdictional [because] it is integral to the express purpose of the section, to this Court's jurisdiction, and to the parties' rights and obligations[.]" (Answering Br. at 8.)

True enough, the review provision's timing requirement does appear in the same subsection as the statutory text granting jurisdiction. 47 U.S.C. § 332(c)(7)(B)(v). And, as we stated in *Kalb*, the Supreme Court's decisions in *Bowles v. Russell*, 551 U.S. 205, 210 (2007), and *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. at 166, both found the source of the timing requirement to be important in determining whether that requirement was jurisdictional. 891 F.3d at 462. In *Kalb*, moreover, we made the same point the City now does, stating that a timing requirement was jurisdictional because "the thirty-day appeal period here is embedded in the same statutory section that grants jurisdiction to the court of appeals." *Id.*

But the location of the timing requirement within the statutory structure, without more, does not clearly reveal Congressional intent. As noted by the Supreme Court in *Sebelius*, a timing requirement should not be classified as jurisdictional solely based on its placement in a jurisdictional provision. *Sebelius*, 568 U.S. at 155 ("A requirement we would otherwise classify as nonjurisdictional … does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions." (citing *Gonzalez v. Thaler,* 565 U.S. 134, 146-47 (2012))). In *Musacchio* too, the Supreme Court held that a timing requirement was nonjurisdictional despite its presence in the jurisdiction-granting section of the statute at issue. 136 S. Ct. at 717. The Court emphasized that the statute did not directly speak of the timing requirement as jurisdictional, despite its mandatory language. *Id.* That reasoning applies with at least equal force here, so the context of the review provision's timing requirement does not make the requirement jurisdictional.

Finally, Wilmington asserts that the timing requirement is jurisdictional because of the historical treatment of similar provisions. The City asserts that the phrase "within 30 days after" creates a "window," during which a complaint must be filed, and not a "deadline." (Answering Br. at 11-12 (citing *W. Union Tel. Co. v. FCC*, 773 F.2d 375, 377 (D.C. Cir. 1985)) (noting that "within 60 days after" creates a 60-day filing window while "no later than 60 days after" creates a filing deadline).) But that argument misses the point because it goes to whether the rule bars suit between certain dates or only after a certain date, not to whether the timing requirement is jurisdictional. *See, e.g.*, *Union Tel. Co.*, 773 F.2d at 377-78 (discussing whether the

28

filing window is a jurisdictional bar for suits filed before the window opens).  And just because a complaint may be unripe before a particular date does not mean that a deadline by which suit must be filed is jurisdictional.  As we stated in *Kalb*, the Supreme Court's decisions in *Bowles* and *Reed Elsevier* both looked to "the Court's prior treatment of [similar timing requirements.]"  *Kalb*, 891 F.3d at 460.  In *Sebelius*, the timing requirement, as here, used the phrase "within" and thus, under Wilmington's logic, it would have been a jurisdictional limit.  *Sebelius*, 568 U.S. at 154.  But the Supreme Court held otherwise, *id.*, and that is of high importance.

Because the text and context of this statute, and historical treatment of timing requirements in similar statutes, do not reveal a clear intent from Congress to make the review provision's timing requirement jurisdictional, we conclude that it is not.[18]

> **D.** **Rule 15 Allows a Supplemental Complaint Filed After a Claims Processing Deadline To Relate Back and Cure an Unripe Initial Complaint.**

We next consider whether an untimely supplemental complaint can, by relating back, cure an initial complaint that was unripe.  We believe it can, and because T Mobile's

---

[18]  That conclusion is further supported by the thoughtful concurrence in *Athens Cellular*, concluding after *Sebelius* that the timing requirement "imposed by Congress in the TCA … is not a jurisdictional bar."  *Athens Cellular*, 886 F.3d at 1113 (Kaplan, J. concurring).

motion to supplement its complaint was properly granted, that supplemental complaint relates back and is ripe. The District Court therefore had jurisdiction and should not have granted Wilmington's motion for summary judgment.

At the outset, we note that the parties do not dispute, and we agree, that the District Court was within its discretion to grant T Mobile's motion to supplement its complaint. Pursuant to Federal Rule of Civil Procedure 15(d), "[o]n motion and reasonable notice, the [district] court may, on just terms, permit a [moving] party to serve a supplemental pleading setting out any … event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d); *see also* 3 James Wm. Moore et al., *Moore's Federal Practice* ¶ 15.30 (3d ed. 2018) ("Supplemental pleadings … are limited to subsequent events related to the claim or defense presented in the original pleading."). Here, the District Court rightly granted T Mobile's motion to supplement. That decision was just, since Wilmington had long since had notice of the event – the filing of the written denial – that occurred after the initial pleading. After all, the City issued that denial, and the denial was featured in the parties' discovery plan. The issuance of it was also plainly related to T Mobile's initial complaint.

That the initial complaint was premature is not a bar since, under Rule 15(d), "[t]he court may permit supplementation even though the original pleading is defective in stating a claim for relief or defense." Fed. R. Civ. P. 15(d). As the Advisory Committee Notes make clear, "Rule 15(d) is intended to give the [district] court broad discretion in allowing a supplemental pleading." Fed. R. Civ. P. 15(d) advisory committee's note to 1963 amendment. It is

30

furthermore "within the discretion of the court to allow a supplemental pleading to be filed at any stage of the case[.]" Moore et al., *supra*, ¶ 15.30. The District Court here was thus well within its discretion in granting T Mobile's motion to supplement the complaint.

Rule 15 does not indicate whether or under what circumstances a supplemental pleading can relate back to the date of the original pleading to avoid the effect of a time limit. 6A Charles Alan Wright et al., *Federal Practice & Procedure* § 1508 (3d ed. 2018). Subsection (c) of the Rule, which provides for the relation back of amended pleadings, does not specifically refer to supplemental pleadings. Fed. R. Civ. P. 15(c). Nor does Rule 15(d) make any mention of relation back. Fed. R. Civ. P. 15(d). But case law and secondary sources have long instructed that once a supplemental complaint is granted, it is treated like an amended complaint for purposes of relation back.[19] Thus, even though Rule 15(d) is in a separate statutory provision from Rule 15(c), a supplemental complaint can relate back. Wright et al., *supra*, § 1508; *see also F.D.I.C. v. Knostman*, 966 F.2d 1133, 1138 (7th Cir. 1992) ("The distinction between an amended pleading and a supplemental pleading is

---

[19] Courts have generally held that a supplemental complaint is eligible for relation back, but rely on different rationales to do so. *See* Wright et al., *supra*, § 1508 ("[S]ome courts have held that for purposes of applying the relation-back doctrine a supplemental pleading may be treated as an amended pleading under Rule 15(c); other courts have applied the relation-back principle directly to supplemental pleadings even though Rule 15(d) does not mention it.") (internal citations omitted).

often disregarded for purposes of relation back under Rule 15(c)."); *Russell v. New Amsterdam Cas. Co.*, 303 F.2d 674, 680-81 (8th Cir. 1962) (finding supplemental pleading related back despite plaintiff suing in the wrong capacity and not achieving appropriate status for diversity jurisdiction until after the limitations period had expired). That stands to reason, since, if a "defendant had notice of the subject matter of the dispute and was not prejudiced in preparing a defense …[,] the policy against stale claims becomes subsidiary to the policy expressed throughout the rules in favor of allowing a party to set forth all the grievances against another party in one action and resolving them on their merits." Wright et al., *supra*, § 1508.

So a pleading filed according to Rule 15(d) can relate back, assuming it meets "the basic test for relation back prescribed by Rule 15(c)." *Id.*; *see also* Moore et al., *supra*, ¶ 15.30 ("A supplemental pleading may relate back to the date of the original complaint if the requirements under Rule 15(c) for relation back are satisfied"); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 609 n.3 (4th Cir. 1980) (supplemental pleading relates back if Rule 15(c)'s test is met). In fact, as the District Court observed, if a supplemental complaint meets the requirements for relation back then "[r]elation back is mandatory," and not subject to additional equitable considerations.[20] (App. at 6 (citing *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202-03 (3d Cir. 2006)).)

---

[20] We note, however, that "[a] party opposing the introduction of a supplemental pleading might wish to raise the statute-of-limitations defense when the additional pleading (1) alleges new matter that brings the earlier pleading up to date; (2) cures a defect in the original pleading;

32

Looking then to Rule 15(c), a complaint "relates back to the date of the original pleading when … [it] asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). The District Court here concluded that there was no need to determine whether T Mobile's supplemental complaint related back, because, even if it did, "it fail[ed] to cure the deficiencies of the initial complaint[.]" (App. at 8.) But given our view that the supplemental complaint could indeed cure the ripeness problem with the initial complaint, we must contend with the relation-back question.

To determine if relation back is proper, the only issue is whether there is a "common core of operative facts in the two pleadings." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004.) Here, that test is met. Both complaints rely on the same core facts. The written denial was a certification and restatement of the earlier oral denial.

Thus, the only question remaining is whether a complaint that relates back can cure an untimely initial complaint, and the answer is yes. The clear preference embodied in Rule 15 is for merits-based decision making. *Cf.* Moore et al., *supra*, ¶ 15.30 ("The same principles that support the liberal amendment of pleadings also apply to supplemental pleadings."). As the Supreme Court has stated, the purpose of Rule 15 is "to balance the interests of the

or (3) states a new claim that arose after the filing of the complaint." Wright et al., *supra*, § 1508.

33

defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010). The requirements of Rule 15 itself protect defendants from an unfair relation back.[21] Under that Rule, courts "look[s] to whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds." *Bensel*, 387 F.3d at 310. In this instance, Wilmington had sufficient notice since the supplemented complaint simply alleged the issuance of the ZBA's written denial. And, of course, Wilmington had notice of everything in the supplemental complaint. It not only knew of the written denial and the reasons given, it generated them.

Relation back has been allowed to address jurisdictional problems. We said in *Berkshire Fashions, Inc. v. M.V. Hakusan II* that relation back may be used to cure defects in jurisdictional allegations. 954 F.2d 874, 878 (3rd Cir. 1992). In that case, the District Court had dismissed the plaintiff's claim based on admiralty jurisdiction and denied the plaintiff's motion to amend its complaint to allege diversity jurisdiction. *Id.* at 877. We concluded that both decisions were in error, holding that an amended complaint relates back and can cure insufficient pleading of subject matter jurisdiction. *Id.* at 878. Recently, our Circuit allowed

---

[21] This is not a pass for endless delay in supplementing a complaint. Indeed, we have endeavored to emphasize that whether to allow supplemental pleading depends on equitable considerations of fairness and notice that district courts must take into account.

a plaintiff to cure a diversity defect when the case had been litigated for years. *See GBForefront*, *L.P., v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 32 (3d Cir. 2018) ("instruct[ing] the [d]istrict [c]ourt to give leave to further amend the complaint … to cure defective jurisdictional allegations").

Other circuits have held the same. *See Woods v. Ind. Univ.-Purdue Univ. at Indianapolis*, 996 F.2d 880, 884 (7th Cir. 1993) ("Consistent with its history and purpose, Rule 15(c) has uniformly been applied to relate back [filings] that cure defective statements of jurisdiction …."); *Boyce v. Anderson*, 405 F.2d 605, 607 (9th Cir. 1968) (allowing amendment alleging that no previous appeal had been taken to the United States Court of Customs and Patent Appeals to cure jurisdictional defect in complaint after statute of limitations had expired). That conclusion is also consistent with 28 U.S.C. § 1653, which allows "[d]efective allegations of jurisdiction [to] be amended, upon terms, in the trial or appellate courts." *Id.*

Courts have similarly permitted cure of actual defects in the court's jurisdiction, going beyond just jurisdictional allegations. For instance, although not in a case involving a later complaint, the Supreme Court has said that a court can drop a dispensable non-diverse party to cure a defect in diversity jurisdiction. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837-38 (1989); *see also E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 163 (2d Cir. 2001) (stating that, "where it is appropriate to relate back an amendment to a pleading under Rule 15, jurisdiction is assessed as if the amendment had taken place at the time the complaint was first filed[,]" and thus replacing a non-diverse

plaintiff with a diverse plaintiff cured any jurisdiction problem); *Rowe v. United States Fid. & Guar. Co.*, 421 F.2d 937, 939, 944 (4th Cir. 1970) (concluding that a defective complaint could be cured by a later complaint that pled an assignment occurring after the original complaint was filed).

Nonetheless, "[a]mendments that go beyond the mere correction or factual modification of the original pleading and significantly alter the claim or defense alleged in that pleading are treated more cautiously by the courts in applying the relation-back doctrine." Wright et al., *supra*, § 1497. The Second Circuit, for instance, only sometimes allows jurisdictional defects to be cured "when the underlying facts, if properly pled, would have supported jurisdiction at the time the action commenced." *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 338 F.3d 119, 125 (2d Cir. 2003); *see also, e.g.*, *Barton v. Ellis*, No. 75-1188, 1977 WL 15469, at *1 (D.S.C. Apr. 26, 1977) (denying using relation back to cure the original complaint since they were defects "not [in the] allegations of existing underlying jurisdictional facts but rather [in] the prerequisite jurisdictional facts themselves"). Wilmington argues such hesitance is appropriate here because allowing relation back to cure the jurisdictional problem with T Mobile's initial complaint "would allow two wrongs under Section 332 [(filing early and filing late)] to make a right." (Answering Br. at 2.)

We again disagree with the City. It is quite true that T Mobile has made procedural matters more difficult than they should be in this case. But denying relation-back to cure the defect in this instance would not comport with Rule 15's aim to encourage resolution of disputes on the merits whenever possible. The ripeness requirement exists so that

36

courts avoid issuing essentially advisory opinions. *See* Richard H. Fallon, Jr. et al., Hart and Wechsler's the Federal Courts and the Federal System 224 (5th ed. 2003) (noting that the ripeness doctrine allows courts to avoid a "dispute … too 'ill-defined' to be appropriate for judicial resolution until further developments … more sharply framed the issues for decision."). That concern ceased to exist here once the supplemental pleading was in place. At that point, the dispute had matured and become capable of judicial review, demonstrating that, "actions taken after the filing of the initial complaint can be used to establish subject matter jurisdiction." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008).

If a supplemental complaint cannot cure an unripe complaint, an endless feedback loop would be created whereby the ripeness problem could never be overcome, even though, as here, the dispute later became obviously ripe. Our sister circuits have recognized that problem and concluded that a supplemental complaint is the solution.[22] In *Wilson v. Westinghouse Electric Corp.*, the Eighth Circuit determined that prohibiting an amended (or supplemental) complaint from alleging facts that occurred after the date the initial

---

[22] In our Circuit, a thoughtful district court decision had long ago reached that conclusion. It held that an untimely supplement adding facts occurring after the initial filing that showed exhaustion of administrative remedies could relate back to the initial premature complaint and allow maintenance of the lawsuit. *Bates v. W. Elec.*, 420 F. Supp. 521, 526-27 (E.D. Pa. 1976).

complaint was filed would turn a premature complaint into an "irretrievable mistake that bars jurisdiction" and would be "precisely the kind of procedural mousetrap that the Federal Rules were designed to dismantle." 838 F.2d 286, 289 (8th Cir. 1988). The court held that, "[e]ven when the District Court lacks jurisdiction over a claim at the time of its original filing, a supplemental complaint may cure the defect by alleging the subsequent fact which eliminates the jurisdictional bar." *Id.* at 290 (citing *Mathews*, 426 U.S. at 75). While *Wilson* addressed a circumstance in which the supplemental complaint was timely filed, the proposition still applies in a case like ours because, if a party was limited to refiling within an applicable time limit, there would be little need to make provision for supplementation of a complaint, as a new complaint could be filed.[23]

---

[23] We note that sparing the cost of refiling and providing convenience to the Court would remain legitimate reasons for allowing supplemental complaints. But the purpose of Rule 15(d) is broader. *See* Wright et al., *supra*, § 1504 ("The purpose of subdivision (d) is to promote as complete an adjudication of the dispute between the parties as is possible. … A supplemental pleading may be employed for a variety of purposes."). Wilmington contends that *Wilson* is inapposite since it involved a timely supplemental complaint. Thus, concern about a perpetual loop outcome was not proper because the plaintiff could have simply refiled his complaint. But we agree that "a plaintiff need not commence a new action when after-occurring events demonstrate that it has a right to relief even if the original complaint was insufficient. A plaintiff may also be allowed to supplement the complaint even if jurisdiction … would not have been proper if the claim had been asserted in an

The Ninth Circuit, in *Security Insurance Co. of New Haven v. United States ex rel. Haydis*, also relied on that logic to find that relation back could cure an unripe complaint filed before a statutory filing window opened. 338 F.2d 444, 448-49 (9th Cir. 1964). In a fact scenario with striking similarities to the present appeal, the plaintiff had filed its claim before a statutory waiting period was over and then did not file an amended complaint until after the statute of limitations period had run. *Id.* at 445-46. The appeals court held that the district court was "not required to apply the doctrine of relation back so literally as to carry it to a time [before it was ripe] so as to prevent the maintenance of the action in the first place." *Id*. at 449.

The Supreme Court has favorably cited *Security Insurance*'s ruling. In *Mathews*, the plaintiff had not satisfied a precondition of filing a complaint by first filing an application with a particular agency. 426 U.S. at 72, 75. The Court noted that a supplemental complaint, alleging that the application had since been filed, would have cured the jurisdictional defect. *Id*. at 75. In saying so, the Court relied

---

independent action." Moore et al., *supra*, ¶ 15.30 (3d ed. 2018) (citation omitted). If supplemental complaints could not cure ripeness, "then all supplemental pleadings of this nature would be defeated for lack of jurisdiction – [the] 'procedural mousetrap' would render all supplemental pleadings void." *George v. IRS*, No. C05-00955 MJJ, 2006 WL 3499230, at *3 (N.D. Cal. Dec. 4, 2006) (citation omitted).

on *Security Insurance*. *Id*. at 75 n.8 (citing *Security Insurance*, 338 F.2d at 447-49).[24]

Yet Wilmington asserts that ripeness can never be cured by a later complaint. It advances four cases for that proposition, but none are helpful. First, the City cites *Delaware Riverkeeper Network v. Secretary Pennsylvania Department of Environmental Protection*, *(Riverkeeper I)*, 833 F.3d 360 (3d Cir. 2016), in which we concluded that, "even though the underlying claim became ripe for review during the pendency of the case, the ripening of the claim did not cure deficient pleadings." (App. at 8.) In that case, however, no attempt to file a later complaint alleging ripeness was made. *Riverkeeper I*, 833 F.3d at 369-70.

Likewise, in another two of the four cases that Wilmington cites, there was no effort made to amend or supplement the complaint. *See TeleSTAR, Inc. v. FCC*, 888 F.2d 132, 134 (D.C. Cir. 1989) (concluding non-final agency action at the time of filing of petition may only be reviewed upon the filing of another petition); *W. Union Tel. Co.*, 773 F.2d at 377-78 (concluding that the court lacked jurisdiction over challenges filed before the action became final). Therefore, neither case determined whether relation back of a later-filed complaint could cure a ripeness problem in the initial complaint.

---

[24] Wilmington contends that *Mathews* is inapposite since the statute of limitations was waived. That argument has no traction since, if it were a jurisdictional bar, it could not be waived.

The City fares no better relying on *Council Tree Communications v. FCC*, in which we stated that "[a] petition to review a non-final agency order is incurably premature." 503 F.3d 284, 291 (3d Cir. 2007). At no point in that case was the complaint ripe, and the petitioner still had a petition for reconsideration pending before the relevant agency on the date the case was decided. *Id.* at 287. Furthermore, *Council Tree* explicitly acknowledged that a supplemental complaint can cure an unripe complaint when there is jurisdiction over that supplemental pleading. *See id.* at 291 ("[W]e note that 'nothing prevented [the petitioners] from supplementing their premature petition with a later protective petition.'" (second alteration in original) (quoting *Horsehead Res. Dev. Co. v. E.P.A.*, 130 F.3d 1090, 1095 (D.C. Cir. 1997))).

Wilmington also makes three policy arguments in support of its position that an untimely supplemental complaint should not be able to cure an unripe complaint. First, it contends that allowing suits to be filed before an action is ripe would "extend[] federal court jurisdiction over local government actions before those actions are final[.]" (Answering Br. at 9.) Second, such filings would waste judicial resources and, in this case, cost taxpayers money, by forcing courts to deal with a higher volume of unripe complaints. Third, the purpose of § 332 is to preserve local zoning authority, which would be undermined by allowing plaintiffs to file suit early and thereby places undue pressure on zoning commissions.

Those contentions, however, are unpersuasive. First, a court would remain without jurisdiction if the claim had not ripened by the time of the supplemental complaint. Second, it

41

seems that Wilmington overstates the impact that a decision allowing an unripe complaint to be cured would have, since our holding today makes it clear that an action is not final until a written decision has been issued. Clarifying when a determination is ripe for review should end any incentive for aggrieved parties to file early to ensure they have not filed too late.

Perhaps more importantly, however, courts can police any potential abuse on a case-by-case basis using Rule 15(d) and the Rule 15(c) test for relation back. It is understood that "relation back of a supplemental pleading should not result in providing unfair procedural advantages to a plaintiff[,] so … relation back may not be for all purposes." Wright et al., *supra*, § 1508. But here no unfair advantage has resulted, and defendants in general will be adequately protected by a district court's Rule 15(d) analysis, which will determine if a supplemental complaint should be allowed at all. For instance, if a locality's action is not yet a final action at the time a Rule 15(d) motion is filed, the motion can easily be denied. *See Beezley v. Fremont Indem. Co.*, 804 F.2d 530, 530 (9th Cir. 1986) (supplemental pleading denied when it still failed to cure defective original pleading).

When all is said and done here, we conclude that, to effectuate the liberal purpose of Rule 15 and to avoid the endless feedback loop that the City's legal argument would create, Rule 15 allows an untimely supplemental complaint to relate back and cure an unripe initial complaint.

## III.   CONCLUSION

For the foregoing reasons, we will reverse the District Court's grant of the City's motion for summary judgment, vacate the District Court's denial of T Mobile's motion for summary judgment, and remand to the District Court for further proceedings consistent with this opinion.[25]

---

[25]   We will vacate the District Court's denial of T Mobile's motion for summary judgment because it was solely based on a finding that T Mobile's suit was not timely brought.