**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3480
_____

KAREEM GARRETT,
Appellant

v.

WEXFORD HEALTH; DR. NAJI MUHAMMAD, Medical
Director;  DEBRA YOUNKIN, Corrections Health
Administrator Nurse;  JANET PEARSON, Nurse Supervisor;
DEB CUTSHALL, PHS Administrator;
DR. KATHRI, Psychologist; STEVEN GLUNT; P.A.
PHYSICIAN JOE;  P.A. PHYSICIAN CASEY; NURSE
LORI; NURSE DEBBIE; NURSE RODGER;
NURSE JOHN; NURSE HANNA; SUPERINTENDENT K.
CAMERON; DEPUTY SUPERINTENDENT DAVID
CLOSE; DEPUTY SUPERINTENDENT
(SECURITY) K. HOLLINBAUGH; DORETTA
CHENCHARICK, Grievance Coordinator/Superintendent's
Assistant; JOEL BARROWS, Major of Unit Managers;
JAMES MORRIS, Major of the Guard; PEGGY
BAUCHMAN, Business Manager;
TRACEY HAMER, Personnel Officer; CAPTAIN
BRUMBAUGH; CAPTAIN MILLER;
LT. SHEA, Security Lieutenant; LT. HORTON; Security
Lieutenant;  LT. LEWIS, Training Lieutenant; LT. GLASS;

L.S. KERNS-BARR, Hearing Examiners/Committee; F. NUNEZ; JACK WALMER, Licensed Psychology Manager; PROGRAM REVIEW COMMITTEE (PRC); M.J. BARBER, Unit Manager, "F" Unit; MR. SHETLER, Unit Manager, "C" Unit; MS. COGAN, Corrections Counselor, "F" Unit; MR. LITTLE, Corrections Counselor, "C" Unit; SGT. SNIPES, Block Sergeant "F" Unit; SGT. JAMES, Block Sergeant "F" Unit; SGT. YOUNG, Block Sergeant "F" Unit; MEDICAL OFFICER LONDON; MEDICAL OFFICER OWENS;  OFFICER GARVEY, R.H.U. L-5 Security; OFFICER UNCLES, R.H.U. L-5 Security

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 3-14-cv-00031
District Judge: The Honorable Kim R. Gibson

Argued June 26, 2019

Before: SMITH, *Chief Judge*, CHAGARES and GREENAWAY, JR., *Circuit Judges*

(Filed: September 10, 2019)


Justin Berg                          **[ARGUED]**
University of Pennsylvania
School of Law
3400 Chestnut Street
Philadelphia, PA  19104

Stuart T. Steinberg
Cory A. Ward
Dechert LLP
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA  19104
        *Counsel for Appellant*

Samuel H. Foreman                    **[ARGUED]**
Benjamin M. Lombard
Weber Gallagher Simpson Stapleton
Fires & Newby
Four PPG Place
5th Floor
Pittsburgh, PA  15222
        *Counsel for Appellees Naji, Cutshall,*
        *Nagel, Thornley, and Wexford Health Sources, Inc.*

Mary L. Friedline
Kemal A. Mericli                    **[ARGUED]**
Daniel B. Mullen
Office of Attorney General of Pennsylvania
1251 Waterfront Place
Pittsburgh, PA  15222
        *Counsel for Appellee Younkin*

Cassidy L. Neal                    **[ARGUED]**
Matis Baum & O'Connor
912 Fort Duquesne Boulevard
Pittsburgh, PA  15222
        *Counsel for Appellee Kahtri*

3

_____

OPINION OF THE COURT
_____

SMITH, *Chief Judge.*

Kareem Garrett sued prison officials claiming that they were deliberately indifferent to his serious medical needs and that they retaliated against him. The District Court dismissed many of Garrett's claims for failure to fully exhaust administrative remedies pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), and dismissed the remainder of his claims for failure to satisfy the "short and plain statement" requirement of Rule 8 of the Federal Rules of Civil Procedure. Because we conclude that the District Court erred in dismissing the claims, we will vacate and remand this matter for further proceedings.

I.

A.

On February 14, 2014, Garrett, then a prisoner at SCI Houtzdale, filed a six-page pro se civil rights complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Middle District of Pennsylvania. Garrett alleged that, while incarcerated, he had been prescribed a wheelchair and walker to assist him with mobility. Upon being transferred to SCI Houtzdale in January 2014, medical staff at that facility allegedly discontinued Garrett's use of a walker and wheelchair, forbade him from receiving walking assistance from other inmates, and discontinued his "psych" medication.

4

According to Garrett, these decisions severely restricted his mobility, caused falls giving rise to further serious injury, and prevented him from accessing both medication and food. In addition, he alleged that the medical staff conducted a rectal examination without his consent and that this amounted to sexual assault. Garrett named six individual defendants[1] and sought injunctive and declaratory relief and compensatory and punitive damages. He acknowledged on the first page of his complaint that, although he had filed grievances concerning his claims, the grievance process was not complete.

B.

On February 24, 2014, Garrett's complaint was transferred to the United States District Court for the Western District of Pennsylvania, the District in which SCI Houtzdale is located. Garrett filed an amended complaint as of right in March 2014, submitting lengthier and more detailed allegations and adding additional staff as defendants.[2] Garrett re-alleged the denial of medication and assistive devices, which led to aggravated injuries and serious falls, missed meals, the inability to receive medication on the "pill line,"

_____

[1] Garrett named Dr. Naji, Debra Younkin, Janet Pearson, Deborah Cutshall, Shella Khatri, and Steven Glunt.

[2] In addition to the original six defendants, Garrett named Wexford Health, Superintendent Cameron, Deputy Superintendent Close, K. Hollinbaugh, Doretta Chencharick, Joel Barrows, L.S. Kerns-Barr, Jack Walmer, M.J. Barber, Mr. Shetler, Ms. Cogan, Mr. Little, and unidentified "operational staff."

denial of access to previously prescribed medications, and the inability to bathe himself. And he included new claims. For instance, he alleged that staff issued him "misconducts" for asking for assistance with walking and that they declined to provide health care after falls and laughed when he fell and struggled on the floor. He also alleged that he experienced retaliation for filing grievances and for pursuing his § 1983 complaint. Garrett identified grievances that he had filed concerning some of these claims.

On April 17, 2014, the Secretary's Office of Inmate Grievances and Appeals issued a Final Appeal Decision on seven of Garrett's grievances concerning his alleged mistreatment at SCI Houtzdale.[3] The Final Appeal Decision

---

[3] The seven grievances included, *inter alia*, descriptions of the following incidents: (1) on January 9, 2014, medical staff conducted an unwanted rectal examination amounting to sexual assault, and Dr. Naji ordered the denial of a walker and ordered Dr. Khatri to discontinue Garrett's "psych" medication; (2) on January 13, 2014, Dr. Naji ordered that Garrett's walker be confiscated, thereby preventing Garrett from walking, accessing food, or showering, and causing him to suffer injury from falls; (3) on January 17, 2014, Garrett urinated on himself and could not properly bathe afterwards because Dr. Naji denied him a walker or wheelchair and prison officials denied him access to a handicapped-accessible shower; (4) on January 18, 2014, Garrett was denied any medication stronger than Tylenol for severe back spasms and chest and back pain; and (5) on January 23, 2014, Garrett suffered adverse health effects from the denial of a wheelchair and walker and could not obtain medication or food due to his inability to walk.

indicates that "[Garrett's] concern of not being provided proper medical care was reviewed along with [his] medical record by the staff of the Bureau of Health Care Services. It was determined that the medical care provided was reasonable and appropriate. . . . No evidence of neglect or deliberate indifference has been found."[4] Joint Appendix ("JA") 163.

## C.

Soon thereafter, on June 3, 2014, Garrett filed a second amended complaint (SAC), having been granted leave from the District Court to do so. The SAC named more than forty defendants.[5] Garrett once again complained of inadequate medical treatment, including the withholding of a walker and wheelchair. He alleged that staff did not provide treatment after falls, relegated him to solitary confinement for asking for

---

[4] Additional final grievance appeal decisions resolving other, similar grievances were issued throughout the summer and fall of 2014.

[5] The SAC named the following defendants: Dr. Naji, Debra Younkin, Janet Pearson, Deb Cutshall, Shella Khatri, P.A. Joe, P.A. Casey, Nurse Lori, Nurse Debbie, Nurse Rodger, Nurse John, Nurse Hanna, Superintendent Cameron, Steven Glunt, David Close, K. Hollinbaugh, Dorretta Chencharick, Joel Barrows, James Morris, Peggy Bachman, Tracey Hamer, Captain Brumbaugh, Captain Miller, Lt. Shea, Lt. Horton, Lt. Lewis, Lt. Glass, L.S. Kerns-Barr, F. Nunez, Jack Walmer, M.J. Barber, Mr. Shetler, Ms. Cogan, Mr. Little, Sgt. Snipes, Sgt. James, Sgt. Young, Medical Officer London, Medical Officer Owens, Security Officer Garvey, Officer Uncles, and unidentified "operational staff."

help walking, and denied him meals. He added descriptions of additional incidents, including an occasion on March 20, 2014, when medical staff left him strapped to a stretcher for nine hours without treatment, unable to move or relieve himself and, later, denied him access to a handicapped-accessible shower in which to clean up after soiling himself. Garrett also alleged that he was denied access to a "disability gym" as part of his medical treatment. The SAC averred that Garrett had "[e]xhaust[ed] [a]ll [a]dministrative [r]emedies." JA 89.

Several groups of defendants filed motions to dismiss the SAC. In December 2014, Garrett requested a stay until after his expected release in March 2015 in order to attempt to obtain private counsel.[6] The Magistrate Judge granted the stay request and directed that Garrett must respond to the motions to dismiss by May 15, 2015.[7] In April, Garrett sought an additional stay, which the Magistrate Judge granted.

On July 15, 2015, Garrett notified the District Court that he had been released on May 19, 2015. He also moved to lift the stay and for appointment of counsel. The Magistrate Judge lifted the stay, denied the counsel motion without prejudice, directed Garrett to update his financial information in light of

---

[6] Garrett previously had moved three times for the appointment of counsel. The Magistrate Judge denied each motion without prejudice.

[7] Although the District Court did not rule on the other motions to dismiss, it granted a motion to dismiss filed by Wexford Health, concluding that Garrett had erroneously named an incorrect entity that does not provide medical care to prisoners at SCI Houtzdale. Garrett has not appealed that dismissal.

8

his release from prison, and set a deadline for Garrett to respond to the motions to dismiss.

Garrett timely responded to the motions to dismiss and again sought to amend the complaint. In February 2016, the Magistrate Judge granted his motion to amend.

D.

The Third Amended Complaint (TAC) (which Garrett mistakenly titled "Second Amended Complaint") was docketed on February 5, 2016. In the TAC, in addition to pursuing relief under § 1983, Garrett added a reference to the Americans with Disabilities Act (ADA) and a claim of intentional infliction of emotional distress. The TAC added more than thirty additional defendants,[8] realleged the prior claims concerning the alleged denial of medical care, and added several supplemental claims, including claims of

_____

[8] In addition to those named in the SAC, the TAC added Wexford Health Sources, Inc., Nurse Rich, Nurse Barnes, Nurse Rob Simongton, Nurse John Altemus, Nurse Lisa Hanna, Nurse Gray, Dr. Haresh Pandya, Dr. William Bainbridge, Dr. Nail [*sic*] Fisher, Dr. Ralph W. Smith, Dr. Muhammad Golsorkhi, Dr. Jafar M., Physician Frederick, Peter Clernick, D.O., Dean Moesh, M.D., Nurse Joyce, Warren Gross, M.D., L.F., Rochelle Rosen, M.D., James Collins, M.D., Paul Noel, III, M.D., R. Mechack, P.A., Supervisor Bob, Nurse Jose, Nurse Grimley, John Wetzel, John Sawtelle, Robin Lewis, Rebecca Reifer, Sgt. White, C.O. Kowaryk, Officer Blackson, Sgt. Chappell, Officer Hunt, Sgt. Woomer, Sgt. Snyder, Mr. Defelice, Heather Moore, Officer McClellan, and Officer English.

retaliation.[9]  Garrett alleged that he had filed grievances as to some of these claims, and the record reflects that he had fully exhausted at least three of them prior to his release.

Several groups of defendants again filed motions to dismiss.  In support of dismissal, defendants Khatri, Dr. Naji, Cutshall, Thornley, and Nagel (collectively referred to as the Medical Defendants[10]) argued that the complaint should be dismissed for failure to properly exhaust administrative remedies under the PLRA.  The Magistrate Judge converted the Medical Defendants' motions to motions for summary

[9] Among the newly added allegations were descriptions of the following incidents: (1) on April 10, 2014, two officials (Woomer and Defelice) told other inmates to stop helping Garrett walk and, when he fell as a result, Woomer told him to "crawl like a dog," JA 142; (2) on April 24, 2014, an official (Hunt) retaliated against Garrett by threatening him and calling him a racial slur for having other inmates assist him and because he engaged in protected activities (*i.e.,* filing grievances); (3) on May 11, 2014, medical staff (Rich, Rodger, and Barnes) intentionally tampered with Garrett's medical records to hide the results of an abnormal EKG reading and refused to provide adequate treatment for chest pain and a possible coronary condition; (4) on June 15, 2014, an official (James) awoke Garrett by slamming him on the chest to deliver a written misconduct in retaliation for filing grievances; and (5) on July 9, 2014, prison officials (McClellan, Hunt, Young, and Barber) denied Garrett access to a handicapped-accessible shower, after which he fell and injured himself.

[10] Dr. Khatri has separate counsel from the other four Medical Defendants.

judgment. The remaining defendants (collectively referred to as the Corrections Defendants) did not assert an administrative exhaustion defense. Instead, the Corrections Defendants argued that the TAC failed to comply with Rules 8 and 12 of the Federal Rules of Civil Procedure, and argued that they were entitled to dismissal or, in the alternative, to a more definite statement under Rule 12(e).

On July 14, 2016, the Magistrate Judge issued a report and recommendation (R&R) recommending that the claims against the Medical Defendants be dismissed for failure to fully exhaust administrative remedies. Relying upon our decision in *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002), the Magistrate Judge concluded that Garrett's status as a prisoner, and the status of the administrative grievance process, must be considered as of the time Garrett filed his original complaint (February 2014), not as of the filing of the TAC (February 2016). Thus, although many of Garrett's claims were administratively exhausted and he was no longer in prison by the time he filed the TAC, the Magistrate Judge recommended that summary judgment be granted in favor of the Medical Defendants based on Garrett's initial failure to exhaust.

As to the Corrections Defendants, the Magistrate Judge observed that the TAC consisted of 36 typewritten pages containing 90 paragraphs, "yet there is virtually no detail as to who did what and the dates of when the violations allegedly occurred." JA 9. The R&R noted that Garrett had cited the ADA but had purported to file his complaint only under § 1983, that the TAC contained references to injunctive relief, which was moot due to Garrett's release, and that the TAC referred to the prior iterations of the complaints as "supplemental" to the original complaint, rather than as amendments. In addition, the

11

R&R observed that the TAC referred to more than 60 defendants, but only 37 had been served.

The Magistrate Judge determined that requiring the Corrections Defendants to respond to the TAC's allegations as pleaded would be unreasonable, and therefore recommended granting the motion for a more definite statement. She expressly cautioned Garrett that this last opportunity to amend should not be viewed as an invitation to add new and unrelated allegations or defendants. She further cautioned that a failure to comply would result in dismissal. Finally, the Magistrate Judge stated that any claims against the Corrections Defendants, like the claims against the Medical Defendants, could be subject to dismissal for failure to exhaust "if [Garrett] failed to exhaust those claims prior to bringing this lawsuit." JA 11. On September 9, 2016, the District Court adopted the R&R and issued an appropriate opinion and order.

E.

On November 21, 2016, Garrett filed his Fourth Amended Complaint (FAC). The FAC, at fifteen typewritten pages, is less than half the length of the TAC. Consistent with the Magistrate Judge's instructions, the FAC included dates and times for most of the alleged events, trimmed the number of defendants,[11] and omitted most of the extraneous references

---

[11] Although the FAC names many of the same defendants as the TAC, Garrett did not include seventeen individuals who had been named in the TAC (Dr. William Bainbridge, Dr. Nail [*sic*] Fisher, Dr. Ralph W. Smith, Dr. Muhammad Golsorkhi, Dr. Jafar M., Physician Frederick, Peter Clernick, D.O., Dean Moesh, M.D., Nurse Joyce, Warren Gross, M.D., L.F., Rochelle Rosen, M.D., James Collins, M.D., Paul Noel, III,

to the ADA and injunctive relief.[12]  In many paragraphs of the FAC, Garrett included a copy of the entire list of more than fifty defendants, broadly alleging that all of the defendants somehow directly participated in his mistreatment, were aware of that mistreatment and did not step in to help him, or participated in retaliation against him.

The FAC also included Garrett's claims against the Corrections Defendants which had first appeared in the TAC. Contrary to the Magistrate Judge's direction, Garrett re-pleaded the previously dismissed claims against the Medical Defendants alleging deliberate indifference to his medical needs beginning in January 2014.  Garrett did, however, adhere to her instruction not to present new claims in the FAC.

_____

M.D., R. Mechack, P.A., Supervisor Bob, Nurse Jose, and Nurse Grimley).

[12] Garrett has not raised any arguments on appeal concerning an ADA claim.  We therefore regard that claim as abandoned. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993). Garrett's counsel also has not raised any arguments on appeal concerning the FAC's reference to injunctive relief.  To the extent Garrett's initial pro se appeal brief raised arguments concerning a right to injunctive relief, we agree with the Magistrate Judge that any request for injunctive relief is moot due to Garrett's release.  *See*, *e.g.*, *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (per curiam) (claims for injunctive relief generally become moot when the inmate is no longer at the facility being complained of).  We therefore affirm the dismissal of the request for injunctive relief.

On June 12, 2017, the Magistrate Judge issued yet another R&R. In it, she again recommended dismissal of the claims against the Medical Defendants for the same reason she had previously given—Garrett's failure to exhaust administrative remedies as of the initial February 2014 filing date.[13] She recommended that the claims against the Corrections Defendants also be dismissed because "Plaintiff has utterly failed to once again comply with Rule 8," concluding that the FAC was neither "short" nor "plain." JA 22. She also concluded that the FAC lacks the facial plausibility to survive a motion to dismiss. The Magistrate Judge stated: "Plaintiff's factual and legal allegations are, to a substantial extent, incomprehensible. There is still virtually no detail as to who did what and when." JA 22. She therefore recommended that the FAC be dismissed in its entirety for failure to comply with Rule 8.

On October 11, 2017, the District Court overruled Garrett's objections to the R&R, adopted the Magistrate Judge's recommendations, dismissed the claims against the Medical Defendants for failure to exhaust administrative remedies, dismissed the claims against the Corrections

---

[13] Given his pro se status, we do not fault Garrett for repleading his claims against the Medical Defendants in the FAC despite the Magistrate Judge's instruction to the contrary. Repleading preserved the dismissal of those claims for our appellate review. *See Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (recognizing that a party should take affirmative measures to ensure the preservation of dismissed claims in a subsequent amended pleading).

Defendants pursuant to Rule 8, and closed the case. Garrett timely appealed.[14]

## II.[15]

The PLRA provides in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because he was a prisoner in February 2014, the PLRA applied to Garrett when he filed his original complaint. The grievance process was not complete as of that date. But Garrett later was released from prison, and subsequently filed the TAC (and, later, the FAC). Nonetheless, the District Court interpreted the PLRA's "[n]o action shall be

---

[14] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. Because this appeal is taken from the District Court's final judgment, we have jurisdiction to review the District Court's judgment and the interlocutory orders that merge into the final judgment. *See Palakovic*, 854 F.3d at 220; *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996). Accordingly, we have jurisdiction to consider both the District Court's dismissal of the TAC as well as its dismissal of the FAC.

[15] We extend our gratitude to Justin Berg of the University of Pennsylvania Law School and Stuart Steinberg and Cory Ward of Dechert LLP for donating their time and talent in accepting this pro bono appointment and for zealously representing Kareem Garrett before our Court.

brought" language to require that administrative exhaustion be complete as of the filing of the initial complaint, regardless of whether the complaint is supplemented or amended after a change in the plaintiff's custody status.[16]  We review the District Court's interpretation of the PLRA *de novo*.  *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 311 (3d Cir. 2001) (en banc).

A.

Garrett's TAC served two functions.  It presented additional claims arising out of the events described in the

---

[16]  We note that we have allowed complaints filed prematurely to be dismissed without prejudice and then refiled when the administrative remedies were exhausted.  "[O]ur pre-PLRA cases involving exhaustion by federal prisoners have stated that '[i]f . . . the administrative remedy has not been exhausted, the complaint should be dismissed without prejudice to its reinstatement [after exhaustion].'"  *Ghana v. Holland*, 226 F.3d 175, 184 n.4 (3d Cir. 2000) (quoting *Veteto v. Miller*, 794 F.3d 98, 100 (3d Cir. 1986)).  We then, in a post-PLRA case, concluded that "District Court[s] must continue to follow the procedures mandated by our pre-PLRA cases."  *Shane v. Fauver*, 213 F.3d 113, 117 (3d Cir. 2000).  We noted that "we are not aware of any specific support in the legislative history for the proposition that Congress also wanted the courts to dismiss claims that may have substantive merit but were inartfully pled."  *Id*.  Had the District Court here simply dismissed the complaint without prejudice, then allowed Garrett to refile once he had exhausted his administrative remedies, this case may have been able to be resolved in a more timely and efficient manner.

original complaint, but which Garrett had not set forth in prior pleadings. It also presented new facts and claims that arose only after the filing of the original complaint, including Garrett's release from prison. Accordingly, under Rules 15(a) and 15(d) of the Federal Rules of Civil Procedure, the TAC became both an amended complaint and a supplemental complaint.[17] *See* Fed. R. Civ. P. 15(a), 15(d). We therefore

---

[17] The Medical Defendants argue that the TAC cannot qualify as a supplemental complaint under Rule 15(d) because Garrett did not file a motion seeking leave to supplement. We disagree. It is true that when Garrett filed his motion for leave to amend, he neither titled the motion as a request to supplement nor referred to Rule 15(d). But, when he filed that motion, he included a copy of his proposed TAC. The TAC includes an entire section devoted to "Plaintiff['s] Complaints Supplemental to Presented Medical Complaints" in which Garrett alleges retaliation since the filing of the original complaint. JA 150. In addition, while the TAC does not directly discuss Garrett's release, it mentions his parole date— a date which had passed by the time he filed the motion for leave to amend. It also reflects his private address rather than a prison address. Thus, the proposed TAC contained supplemental facts and claims that occurred after the initial filing date, and the Magistrate Judge was aware of those supplemental facts and claims when she granted Garrett leave to file it. And although she chastised Garrett for including new claims in the TAC, she did not strike them. Accordingly, and particularly in light of Garrett's pro se status and our policy of considering motions based on their substance rather than their title, *see Lewis v. Att'y Gen.*, 878 F.2d 714, 722 n.20 (3d Cir. 1989) ("A pleading will be judged by its substance rather than according to its form or label.") (quoting 5 C. Wright & A.

begin our discussion by considering the purpose and effect of filing a supplemental or amended complaint under Rule 15.

"The function of Rule 15(a), which provides generally for the amendment of pleadings, is to enable a party to assert matters that were overlooked or were unknown at the time the party interposed the original complaint." 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1473 (3d ed. 2019). Rule 15(a) embodies the federal courts' policy of liberal pleading amendment by ensuring that an inadvertent error in, or omission from, an original pleading will not preclude a party from securing relief on the merits of his claim. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006). In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. *Palakovic*, 854 F.3d at 220; Wright & Miller, *supra*, § 1476. Thus, the most recently filed amended complaint becomes the operative pleading. *See W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013). It has long been the rule then that where a party's status determines a statute's applicability, it is his status at the time of the amendment and not at the time of the original filing that determines whether a statutory precondition to suit has been satisfied.[18] *See*, *e.g.*, *Mo., K&T Railway Co. v. Wulf*, 226 U.S. 570, 575 (1913) (amended

---

Miller, *Federal Practice and Procedure* § 1286 (1969)), we conclude that Garrett properly invoked Rule 15(d) and that his TAC was, in part, a supplemental complaint.

[18] Of course, the original pleading is not entirely without effect. When the original pleading has been superseded, an amended pleading still may relate back to the filing date of the original pleading for statute of limitations purposes. Fed. R. Civ. P. 15(c).

petition related back to commencement of action and cured initially improper pleading); *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1503 (3d Cir. 1996) (subject matter jurisdiction must be reassessed as of the filing of the amended complaint).

Rule 15(d) operates in conjunction with Rule 15(a). Upon motion and reasonable notice, Rule 15(d) allows a court to grant a party the ability to "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Thus, rather than set forth additional events that occurred before the original complaint was filed, as does a Rule 15(a) amendment, a supplemental pleading under Rule 15(d) presents more recent events. Rule 15(d) thus promotes a complete adjudication of the dispute between the parties. *See William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1057 (9th Cir. 1981).

Rule 15(d) expressly provides that supplementation may be permitted "even though the original pleading is defective in stating a claim or defense." Fed. R. Civ. P. 15(d). Supplementation under Rule 15(d) therefore can be employed to allege subsequent facts to cure a deficient pleading. *See Mathews v. Diaz*, 426 U.S. 67, 75 & n.8 (1976) (recognizing that plaintiff who had not satisfied "a nonwaivable condition of jurisdiction" before filing suit had subsequently satisfied the condition, so "[a] supplemental complaint in the District Court would have eliminated this jurisdictional issue"); *see also*, *e.g.*, *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 5 (1st Cir. 2015) (discussing the use of Rule 15(d) to add newly arising facts to cure pleading defects such as lack of subject matter jurisdiction or standing).

Our recent decision in *T Mobile Ne. LLC v. City of Wilmington, Del.*, 913 F.3d 311 (3d Cir. 2019), illustrates the operation of Rule 15(d) to cure an initially defective complaint. There, T Mobile sought to proceed in district court pursuant to the Telecommunications Act of 1996 (TCA), which permits a disappointed wireless service provider to seek review of a zoning board decision "within 30 days after" a zoning authority's "final action." 47 U.S.C. § 332(c)(7)(B)(v). T Mobile filed its complaint within 30 days after the zoning board's oral decision, not waiting for the subsequent written decision, which followed nearly a year later. *T Mobile*, 913 F.3d at 316–17. The District Court concluded that it lacked jurisdiction to proceed, despite T Mobile's later-filed supplemental complaint addressing the issuance of the final written decision. *Id.* at 317.

On appeal, we agreed with the District Court that the board's written decision constituted the appealable "final action" under the TCA, and so T Mobile's complaint was not yet ripe when it was originally filed. *Id.* at 318, 323. We determined that the TCA's 30-day filing requirement is non-jurisdictional, so the later-filed supplemental complaint, which T Mobile belatedly filed more than 30 days after the board's "final action," was not necessarily barred. *Id.* at 324. We then concluded that T Mobile's supplemental complaint could—and did—relate back to the date of the initial complaint to cure its initial unripeness. *Id.* at 326.

We observed that the District Court's decision to grant T Mobile's motion to supplement its complaint under Rule 15(d) was a proper exercise of its discretion. Indeed, we described the decision as "just" because the defendant "had long since had notice of the event—the filing of the written denial—that occurred after the initial pleading." *Id.*

20

Moreover, Rule 15(d)'s express terms permit supplementation where an original pleading is defective. *Id.*

Although Rule 15(d) does not expressly indicate whether or when a supplemental pleading can relate back to the original complaint, we determined that "case law and secondary sources have long instructed that once a supplemental complaint is granted, it is treated like an amended complaint for purposes of relation back." *Id.* at 327. Thus, like an amended complaint, a supplemental complaint may "relate back" when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Because T Mobile's original and supplemental complaints both "rel[ied] on the same core facts," relation back was proper. *T Mobile*, 913 F.3d at 328.

As *T Mobile* makes clear, a supplemental complaint under Rule 15(d) that relates back to the original complaint may cure the filing defect in the original complaint. *Id.* We observed that this is consistent with the policy underlying Rule 15: "The clear preference embodied in Rule 15 is for merits-based decision making." *Id.* We also noted that many courts have permitted the use of relation back to address and cure filing defects, for instance, by permitting a party to re-plead to establish subject matter jurisdiction or to drop a party that would bar the exercise of diversity jurisdiction. *Id.* at 328–29. This preference for merits-based decision making and the historical use of Rule 15(d) to cure filing defects militated in favor of a conclusion that T Mobile's untimely supplemental complaint related back so as to cure the unripeness of its original complaint.

21

When we apply the logic of *T Mobile* to Garrett's case, the outcome is clear. Garrett's original complaint was defective because, although he was a prisoner when he filed it, he failed to first exhaust his administrative remedies by completing the prison grievance process then in effect. Two years later, Garrett filed an amended and supplemental complaint—the TAC—pursuant to Rule 15. The TAC, as the operative amended pleading, superseded Garrett's prior complaints. *Palakovic*, 854 F.3d at 220. Both the amended and supplemental claims in the TAC relate back to the original complaint because they concern the same core operative facts of which the Medical Defendants long had notice.[19] *See* Fed. R. Civ. P. 15(c)(1); *T Mobile*, 913 F.3d at 328. When he filed the TAC, Garrett was no longer a prisoner and therefore was not subject to the PLRA's administrative exhaustion

---

[19] Pennsylvania's two-year statute of limitations applies to Garrett's § 1983 claims. *See Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). Many of the events giving rise to Garrett's claims occurred in January 2014, and the TAC was filed in February 2016, more than two years later. Because we conclude that the TAC relates back under Fed. R. Civ. P. 15(c), Garrett does not face a statute of limitations problem.

requirement.[20]  Thus, because it relates back to the original complaint, the TAC cures the original filing defect.[21]  *Id.*

---

[20] As previously noted, the TAC does not explicitly allege that Garrett was a non-prisoner at the time he filed it, although that fact is obvious from the face of the TAC.  *See supra* note 16.  The absence of an express allegation does not impact our analysis.  It was well known to the defendants and to the District Court that Garrett had been released before he filed the TAC; he provided written notice advising of that fact.  Moreover, it was not Garrett's obligation to plead his status as a non-prisoner because the PLRA is not the source of his claim. *See Jones v. Bock*, 549 U.S. 199, 212 (2007).  Rather, as the Supreme Court explained in *Bock*, the onus is on a defendant to raise administrative exhaustion as an affirmative defense. *Id.*  Logically, an individual's status as a prisoner or non-prisoner for purposes of the applicability of the PLRA's administrative exhaustion provision also cannot be an affirmative pleading requirement.  Garrett appropriately argued his status as a non-prisoner in response to the Medical Defendants' motion to dismiss the TAC.

[21] A recent decision by the Tenth Circuit, *May v. Segovia*, 929 F.3d 1223 (10th Cir. 2019), takes a contrary view of the operation of Rule 15.  In *May*, the Court decided that Rule 15 relates back to the original complaint for purposes of the PLRA's exhaustion requirement, concluding that an amended complaint "supersedes the original complaint's *allegations* but not its *timing*."  *Id.* at 1229 (emphasis in original).  In addition, the *May* Court took the view that relation back for purposes of cure is only permissible when the pleading flaw is jurisdictional in nature and is therefore an affirmative pleading

B.

Before we may undertake the fairly straightforward Rule 15 analysis, we must resolve an issue which the Magistrate Judge recognized in her first R&R. A precedential opinion of this Court can be read to suggest that the § 1997e(a) administrative exhaustion requirement undermines the usual operation of Rule 15, so that a complaint that is defective for failure to satisfy the PLRA's administrative exhaustion requirement cannot be cured. Specifically, according to the Magistrate Judge, under *Ahmed v. Dragovich*, 297 F.3d 201 (3d Cir. 2002), "Plaintiff's status as a 'prisoner' is determined at the time his complaint is 'brought' or filed in court."[22] JA

---

requirement. *Id.* The Tenth Circuit's approach is at odds with our decision in *T Mobile*. We therefore decline to adopt it.

[22] Given the Magistrate Judge's conclusion (adopted by the District Court) that Garrett could never have cured his initially defective complaint, we find it perplexing that Garrett was repeatedly granted leave to amend. The Medical Defendants first raised their exhaustion defense in November 2014, and, rather than permitting multiple amendments over the course of nearly two years, the District Court could have promptly considered the defense and denied further amendments as futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (leave to amend need not be provided where amendment would be inequitable or futile). Had that court done so, the parties would have benefitted from a more prompt disposition. For example, Garrett could have filed a new complaint after exhaustion was complete but before both his release and the running of the statute of limitations. But this observation has no impact here because, as we will discuss, we

6.  We therefore consider the import of *Ahmed* and its effect, if any, on Garrett's case.

In *Ahmed*, the plaintiff filed grievances against two prison officials alleging excessive force but failed to complete the grievance appeal process.  He then filed a § 1983 complaint.  The District Court dismissed the complaint without prejudice for failure to exhaust administrative remedies pursuant to the PLRA.  Ahmed did not appeal the dismissal.  Subsequently, the statute of limitations for Ahmed's claim expired and he was released from prison.  Only then did Ahmed move in the District Court for leave to file an amended complaint.  He proposed that his amended complaint should relate back to the date of the initial complaint, to reflect both an untimely effort to appeal his grievance as well as his release from prison.  The District Court denied the post-judgment motion, and Ahmed appealed.

We observed that, although the dismissal of the complaint was without prejudice and therefore was not immediately appealable, it became a final and appealable judgment after the statute of limitations expired.  297 F.3d at 207.  Once the dismissal became a final judgment, Ahmed could no longer invoke Rule 15 because that rule is not intended to permit the post-judgment amendment of a complaint. *Id.* at 207–08. Rather, following entry of judgment, Rule 59 and Rule 60 govern post-judgment proceedings. *Id.* at 208.  We therefore construed Ahmed's motion as seeking relief under Rule 60 and considered whether the District Court's denial of the motion was an abuse of its discretion. *Id.* at 209.

---

do not agree with the District Court's underlying conclusion that Garrett's original complaint suffered from an incurable flaw.

25

We concluded it was not.

Specifically, we observed that allegations concerning Ahmed's untimely appeal of the grievance would not have cured his failure to exhaust administrative remedies. *Id.* at 209. We rejected Ahmed's argument that his proposed post-judgment amendment would have demonstrated "substantial compliance" with the exhaustion requirement as discussed in *Nyhuis v. Reno*, 204 F.3d 65, 77–78 (3d Cir. 2000). We observed, "[w]hatever the parameters of 'substantial compliance' referred to [in *Nyhuis*], it does not encompass a second-step appeal five months late nor the filing of a suit before administrative exhaustion, however late, has been completed." *Ahmed*, 297 F.3d at 209. We therefore concluded that Ahmed's proffered post-judgment amendment of the complaint could not cure its defect. *Id.*

We also concluded that a post-judgment amendment incorporating the fact of Ahmed's release would not have cured the defect in the initial complaint. We acknowledged the Commonwealth's concession that Ahmed would not have been barred from filing a *new* § 1983 complaint following his release, and that any new matter would not have been subject to the PLRA's strictures. But we declared that Ahmed was "bound by the PLRA because his suit was filed . . . almost three years before he was released from prison." *Id.* at 210.

In applying *Ahmed* to Garrett's case, the District Court concluded that the filing of the initial complaint was the unalterable starting point from which to consider a plaintiff's status as a prisoner. This over-reads *Ahmed*, the post-judgment posture of which renders it inapposite to Garrett's case.

Ahmed was a prisoner subject to the PLRA when he

26

filed his complaint, and he remained a prisoner subject to the PLRA when the District Court entered its final judgment. Because he sought to reopen a final judgment, the policy favoring the finality of judgments was implicated. The permissive policy favoring amendment under Rule 15 was simply not relevant. *See Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615–16 (6th Cir. 2010) ("[W]hen a Rule 15 motion comes after a judgment against the plaintiff, . . . Courts . . . must consider[] the competing interest of protecting the finality of judgments and the expeditious termination of litigation." (emphasis and internal quotation omitted)); *see also* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1489 (3d ed. 2019) ("To hold [that Rule 15 permits amendment after judgment] would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation.").

In the post-judgment context, the narrow grounds for relief set forth in Rules 59 and 60 must guide a District Court's decision about whether an otherwise-final judgment should be disturbed. Indeed:

> If a permissive amendment policy applied after adverse judgments, plaintiffs could use the court as a sounding board to discover holes in their arguments, then 'reopen the case by amending their complaint to take account of the court's decision.' That would sidestep the narrow grounds for obtaining post-judgment relief under Rules 59 and 60, make the finality of judgments an interim concept and risk turning Rules 59 and 60 into nullities.

*Leisure Caviar*, 616 F.3d at 616 (citations omitted). Thus, a different set of rules emphasizing vastly different policies pertained to the motion in *Ahmed*, and those rules do not apply to Garrett's case.

C.

To the extent we were in need of reassurance that the District Court's expansive application of *Ahmed* is mistaken, the Supreme Court's unanimous decision in *Jones v. Bock*, 549 U.S. 199 (2007), provides such comfort. *Bock* does not directly address the issues in Garrett's appeal, nor does it overrule *Ahmed*. It does, however, offer principles of critical importance to our resolution of Garrett's appeal and how we must understand and apply *Ahmed.*

In *Bock*, the Supreme Court considered a series of procedural rules that the Sixth Circuit had adopted in an effort to implement various aspects of the PLRA, including its administrative exhaustion and screening requirements. The Sixth Circuit's rules required, *inter alia*, that: (1) a prisoner's complaint must include affirmative proof of exhaustion; (2) the prisoner's grievances must identify every individual who is later named in the lawsuit; and (3) no part of the complaint may proceed if any single claim is not properly exhausted, and leave to amend to proceed with unexhausted claims is not permitted.

The Supreme Court rejected the Sixth Circuit's approach, holding that "adopting different and more onerous pleading rules to deal with particular categories of cases should be done through established rulemaking procedures, and not on a case-by-case basis by the courts." *Id.* at 224. Thus, because the PLRA did not impose the strict requirements that the Sixth

Circuit had adopted, the more generous pleading requirements set forth in the Federal Rules controlled.

Addressing each of the Sixth Circuit's rules in turn, the Supreme Court first held that administrative exhaustion in the PLRA context, consistent with the general practice under the Federal Rules, is an affirmative defense and not a pleading requirement. *Id.* at 212. The Court stated, "we have explained that courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns." *Id.* Furthermore, it held "that the PLRA's screening requirement does not—explicitly or implicitly—justify deviating from the usual procedural practice beyond the departures specified by the PLRA itself." *Id.* at 214. Indeed, in other instances where Congress deviated from the usual pleading requirements, "it did so expressly." *Id.* at 216.

Next, the Supreme Court rejected the Sixth Circuit's rule requiring that every defendant must be identified in the initial prisoner grievance in order for the complaint to proceed, concluding that "the lower court's procedural rule lacks a textual basis in the PLRA." *Id.* at 217. Rather, the prisoner must comply with the particular prison's grievance procedures, whatever those may be, in order to satisfy the PLRA's exhaustion requirement. *Id.* at 218.

Finally, the Supreme Court rejected the Sixth Circuit's practice of dismissing the entire complaint when only some claims were unexhausted. Although the practice had some support in § 1997e(a), which states that "[n]o action shall be brought" unless administrative remedies are exhausted, the court was dismissive of this language as "boilerplate" that is not sufficient to lead to dismissal of an entire action solely because some claims are wanting. *Id.* at 220. Rather, the Court

held that the more general rule of practice applies, such that "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." *Id.* at 221.

*Bock* teaches, then, that the usual procedural rules apply to PLRA cases unless the PLRA specifies otherwise, and that a decision about whether to apply the usual procedural rules should not be guided by "perceived policy concerns." *Id.* at 212. Applying these important principles, we conclude that the PLRA does not override the usual operation of Rule 15 here. Accordingly, Garrett's status as a non-prisoner at the time he filed the TAC is determinative of the Medical Defendants' administrative exhaustion defense.

D.

As discussed in Section II.A., the normal operation of Rule 15 means that, when filed, Garrett's TAC became the operative pleading. Because the TAC relates back to Garrett's original complaint, his change in status (*i.e.*, his release) operates to cure the original filing defect (*i.e.*, his failure to exhaust administrative remedies). *See T Mobile*, 913 F.3d at 328. There is nothing in the language of § 1997e(a) implicitly or explicitly mandating a contrary approach.

Our conclusion is consistent with our own case law. In *Hagan v. Rogers*, 570 F.3d 146, 154–55 (3d Cir. 2009), for example, we held that the PLRA cannot alter a rule of civil procedure unless it makes an express reference to such a rule, or it impliedly repeals it by "clear and manifest" intention to do so.[23] We therefore concluded that the PLRA does not

---

[23] *Hagan*, which was decided after *Bock*, did not directly apply *Bock*. Nonetheless, its analysis and result are consistent with

displace the joinder rules set forth in Rule 20 because the PLRA makes no reference to joinder, and because there is no "irreconcilable conflict" between Rule 20 and the PLRA. *Id.* at 155. Analogously, nothing in the PLRA's administrative exhaustion provision mentions Rule 15, much less alters the text or operation of the rule.

Indeed, we followed this approach even before the Supreme Court decided *Bock*. In *Grayson v. Mayview State Hospital*, 293 F.3d 103, 110 (3d Cir. 2002), and *Shane v. Fauver*, 213 F.3d 113, 116–17 (3d Cir. 2000), we rejected the argument that language in the PLRA directing that a court "shall dismiss" a complaint under certain circumstances is sufficient to override the more general procedural requirement under Rule 15 that a litigant is entitled to amendment unless amending the complaint would be inequitable or futile. In *Grayson*, for instance, we concluded: "there is no reason that a district court should fail to retain its pre-existing authority under [Rule 15] to permit plaintiffs leave to amend." *Grayson*, 293 F.3d at 111. Similarly, in *Shane*, we stated: "we are . . . hesitant to conclude that Congress meant to change established procedures without a clearer indication than we have here." *Shane*, 213 F.3d at 117.

Looking beyond our own case law, a sister Circuit has applied *Bock* to circumstances similar to Garrett's, and that Court reached a conclusion consistent with how we decide the instant matter. In *Jackson v. Fong*, 870 F.3d 928 (9th Cir. 2017), the Ninth Circuit considered whether Jackson, a prisoner who filed an initial complaint before administratively

*Bock*. *Hagan*, like *Bock*, concludes that the usual procedural rules apply to PLRA cases unless the PLRA makes clear that a departure from the rules is required.

exhausting his claims, and who was granted leave to amend his complaint after his release, continued to be subject to the PLRA's exhaustion requirement. As the Ninth Circuit summed up the matter, Jackson's case turned on "whether the court should look to the initiation of the suit (when Jackson was a prisoner, and had not exhausted his remedies), or to Jackson's operative third amended complaint (filed when Jackson was not a prisoner, and the exhaustion requirement did not apply)." *Id.* at 933.

The Ninth Circuit observed that the operative complaint "completely supersedes" any earlier complaints, and that *Bock* directs that an exhaustion defense under the PLRA should be considered within the framework of the Federal Rules of Civil Procedure. *Id.* at 934. Applying these principles, the Court concluded that Jackson's "amended complaint, filed when he was no longer a prisoner, obviates an exhaustion defense." *Id.* In reaching its decision, the Ninth Circuit explicitly chose not to follow our opinion in *Ahmed*, both because *Ahmed* pre-dates *Bock* and because it did not apply Rule 15. *Id.* at 935.

The *Jackson* Court dismissed several of the defendants' policy concerns about the potential for its holding to lead to litigation abuse by prisoners. It observed, for instance, that Rule 15 permits a District Court discretion to deny leave to amend, particularly where a prisoner appears to be "gaming the courts" in some manner. *Id.* at 936. In addition, the Court observed that an administrative exhaustion requirement after a prisoner's release would not serve the purpose of permitting officials to address problems internally because, after release, "there is no internal [grievance] process left to undermine." *Id*. Because Jackson could have chosen to file a new suit but did not do so, his decision to amend promoted judicial economy. *Id.* Finally—and most importantly—the Ninth Circuit

32

observed that, under *Bock*, it did not have license to rely on policy concerns in carving out exceptions to the Federal Rules in any event. *Id.* at 937.

Here, the Medical Defendants contend that we should not follow *Jackson*. They state that *Jackson* is "very short" and "gave virtually no serious thought to the implications of its very simplistic holding," Med. Def. Supp. Br. 24, arguing that the decision overlooked the significant policy concerns at stake. The Medical Defendants express concerns about fairness, observing that they promptly raised their exhaustion defense long before Garrett was released from prison. But, they contend, only because the District Court granted Garrett both a stay and several opportunities to amend, the District Court did not issue its ruling until after his release. In addition, they argue that permitting supplementation after release would create an incentive for prisoner-plaintiffs to delay proceedings until their release. *Id.* at 28. These arguments are unpersuasive.

The decision of whether to permit a plaintiff to file an amended or supplemental complaint under Rule 15 is within a District Court's discretion and is guided by Rule 15's liberal standards. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Garrett filed his TAC and FAC with leave of court. Rule 15 permits the District Court discretion to deny additional amendments (after the initial amendment as of right, *see* Fed. R. Civ. P. 15(a)(1)) precisely so that litigants will not try to game the system by improperly delaying a case or otherwise causing prejudice to a defendant's validly raised defenses. As the *Jackson* court aptly observed, "[d]istrict court discretion is critical to assessing the fairness of amended pleadings." 870 F.3d at 936.

The Medical Defendants also worry that departments of corrections, in denying release to prisoners, will be accused of doing so solely for the improper reason of preserving their exhaustion defense. Furthermore, according to Dr. Khatri, we should consider a plaintiff's prisoner status only at the time of the initial complaint because: (1) an individual's confinement status might change during the course of the litigation; (2) looking to confinement status at the time of the initial filing serves judicial economy; and (3) a contrary conclusion would "provide[] a loophole to the Statute which was not intended by Congress," Khatri Supp. Br. 22; *see also Harris v. Garner*, 216 F.3d 970, 981 (11th Cir. 2000) (en banc) ("[T]he intent of Congress . . . was to reduce the number of prisoner lawsuits *filed.*").

The problem with these arguments is that they are the sort of "perceived policy concerns" that the Supreme Court has directed cannot dictate whether we apply the usual pleading rules.[24] *See Bock*, 549 U.S. at 212 ("In a series of recent cases, we have explained that courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns."). Absent an explicit or implicit justification contained in the PLRA itself for deviating from the usual procedural practice under Rule 15, *Bock* directs that we must set aside such concerns. *See id.* at 212–14.

---

[24] The changing of a plaintiff's status is less a policy concern than a practical administrative consideration. But it seems to us a fairly straightforward exercise to assess an individual's status as a prisoner or non-prisoner—and hence the applicability of the PLRA—as of the time of an amended or supplemental pleading.

E.

In support of their view that we should affirm the District Court's judgment, the Medical Defendants rely primarily on the "express language of the PLRA"—namely, its "[n]o action shall be brought" language. Khatri Supp. Br. 16. But, as we have discussed, the Supreme Court has indicated that this language is "boilerplate" and does not compel a conclusion that the usual procedural rules no longer apply. *Bock*, 549 U.S. at 220. The Medical Defendants point to nothing within the language of the PLRA directing a deviation from the usual operation of Rule 15. *See Bock*, 549 U.S. at 214.

Also in support of their view, the Medical Defendants rely on *Ahmed*, arguing that Garrett's release does not free him from application of the PLRA, including its exhaustion requirement. They cite *Ahmed* for a general proposition that a released prisoner cannot employ Rule 15 to show that his release renders the PLRA inapplicable. But as we have already discussed, their argument erroneously extends *Ahmed* beyond its post-judgment posture and puts it in tension with the Supreme Court's opinion in *Bock*. We cannot agree with this interpretation.

The Medical Defendants also point to the Eleventh Circuit's decision in *Harris v. Garner*, 216 F.3d at 970. There, a group of inmates filed a civil suit under the PLRA but, by the time the District Court entered judgment, more than half of the plaintiffs had been released. The question before the *Harris* Court was whether the PLRA's provision stating that "[n]o Federal civil action may be brought by a prisoner . . . without

a prior showing of physical injury," 42 U.S.C. § 1997e(e), continued to apply to the released prisoners.

The Eleventh Circuit concluded that the PLRA's "[n]o . . . action may be brought" language refers specifically and exclusively to the initial commencement of the lawsuit. *Harris*, 216 F.3d at 974. The released prisoners did not properly file an amended or supplemental complaint to reflect their release, but the *Harris* Court held that an amendment or supplement would have made no difference because "the confinement status of the plaintiffs at any time after the lawsuit is filed is beside the point." *Id.* at 981.

According to the Eleventh Circuit, its interpretation of the PLRA is consistent with Rule 15:

> In proper circumstances and when the requirements contained in Rule 15 are met, the rule does permit amendments or supplements to pleadings in order to bring to the attention of the court changes in the facts, but other law—in this instance [the PLRA]—determines whether those changes in the facts make any difference.[25]

---

[25] Indeed, the *Harris* Court observed that, if the PLRA conflicts with Rule 15, then "the rule would have to yield to the later-enacted statute to the extent of the conflict." 216 F.3d at 982. We agree with this basic principle, which is consistent with the Supreme Court's decision in *Bock*. *See Bock*, 549 U.S. at 216 ("[W]hen Congress meant to depart from the usual procedural requirements, it did so expressly."). We do not share the Eleventh Circuit's view, however, that the PLRA expressly overrides Rule 15 with regard to the administrative exhaustion requirement. Such a conclusion, in our view, stands in tension

*Id.* at 982. But because the point of reference is the time of the original filing, ostensibly curative Rule 15 amendments or supplements are irrelevant to the viability of the suit.

We decline to adopt the Eleventh Circuit's analysis. *Harris*, which was decided prior to the Supreme Court's decision in *Bock*, purports to rely on the "plain and ordinary meaning" of the language of the PLRA—namely, the "[n]o . . . action may be brought" language. *Id.* at 974. In *Bock*, the Supreme Court described the nearly identical language of the PLRA's exhaustion provision as "boilerplate language" that should not "lead to the dismissal of an entire action if a single claim fails to meet the pertinent standards." *Bock*, 549 U.S. at 220. Applying *Bock*, as we must, we cannot agree with the Eleventh Circuit's interpretation. The PLRA is not sufficiently plain in its meaning to override the usual operation of Rule 15. *See id.* at 214.

In sum, we conclude that there is nothing in the PLRA to indicate that a plaintiff cannot employ Rule 15 to file a supplemental pleading to cure an initial filing defect. Because Garrett filed the TAC as a non-prisoner, administrative exhaustion was not an appropriate basis for its dismissal. We will therefore vacate the District Court's dismissal of Garrett's claims against the Medical Defendants for failure to exhaust administrative remedies.

---

with *Bock* and its characterization of the "[n]o action shall be brought" phrase as "boilerplate language." *Id.* at 220.

III.

We turn next to Garrett's claims in the FAC against the Corrections Defendants, which the District Court dismissed for failure to satisfy Rule 8. We review the dismissal for abuse of discretion.[26] *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996); *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1217 (3d ed. 2019).

In conducting our review, we must keep in mind the principles that guide the exercise of that discretion. At the outset, we recognize that the decision to dismiss a complaint should not be entered lightly because it "forecloses inquiry into the merits." *Schaedler v. Reading Eagle Publ'n, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967). We also note that it is an abuse of discretion to dismiss an entire complaint if it contains some claims that satisfy Rule 8. *See Frazier v. Se. Pa. Transp. Auth.*, 785 F.2d 65, 68 (3d Cir. 1986), *abrogated on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (reversing the dismissal of

---

[26] Garrett asserts that we should conduct a *de novo* review of whether the District Court applied the proper liberal pleading standard to Garrett's FAC. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 n.6 (3d Cir. 2011). He is wrong. The District Court correctly identified the liberal construction standard applicable to Garrett's pro se pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). We therefore consider whether the District Court abused its discretion in applying that standard, not the legal question of whether the District Court employed the correct standard in the first instance.

the entire complaint as "broad and conclusory" where the complaint set forth four claims with adequate specificity). Perhaps most importantly here, we recognize that Garrett was proceeding without the assistance of counsel at the time he filed the FAC.

"Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). This already liberal standard is "even more pronounced" where a plaintiff files the complaint without the assistance of counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004); *Schaedler*, 370 F.2d at 798. Courts are more forgiving of pro se litigants for filing relatively unorganized or somewhat lengthy complaints. Wright & Miller, *supra*, § 1217. This practice is driven by an understanding that a court must make reasonable allowances to protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

Ultimately, the question before us is not whether we might have chosen a more lenient course than dismissal in the first instance, but rather whether the District Court abused its discretion in ordering the dismissal. *Westinghouse*, 90 F.3d at 702.

A.

Rule 8 imposes "minimal burdens on the plaintiff at the pleading stage." *Frazier*, 785 F.2d at 67. Under Rule 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Further, Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ.

P. 8(d)(1). Fundamentally, Rule 8 requires that a complaint provide fair notice of "what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The rule "ensure[s] that claims [are] not filtered for merit at the pleading stage, but [are] determined on their merits rather than through missteps in pleading." J. Moore, 2 *Moore's Federal Practice* § 8.04[1][a] (3d ed. 2019).

To satisfy the rule, a complaint must make a showing sufficient to justify moving past the pleading stage. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234–235 (3d Cir. 2008). "[T]his obligation is not burdensome, but it is nonetheless an essential obligation." Allan Ides, *Bell Atlantic and the Principle of Substantive Sufficiency Under Federal Rule of Civil Procedure 8(a)(2): Toward a Structured Approach to Federal Pleading Practice*, 243 F.R.D. 604, 609 (2006). The claim must have "facial plausibility," which means that the "plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations of liability are insufficient. *See id*. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Rule 8 thus requires that the pleading "possess enough heft" to demonstrate an entitlement to relief. *Bell Atlantic*, 550 U.S. at 557.

In assessing whether a pleading satisfies Rule 8, there is no bright-line rule to be applied. "Inevitably, the sufficiency of a complaint must be determined on a case-by-case basis." *Frazier,* 785 F.2d at 68. The circumstances surrounding the particular pleading, including the nature of the action, the sort of relief being sought, the availability of information, and other

practical considerations must guide the inquiry into whether the litigant's statement of his claim qualifies as "short and plain." *See* Wright & Miller, *supra*, § 1217. Put simply, "judging the sufficiency of a pleading is a context-dependent exercise." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010); *see also Sweda v. Univ. of Pa.*, 923 F.3d 320, 326 (3d Cir. 2019) (Rule 8 "operate[s] with contextual specificity.").

B.

We first consider Rule 8's "short" statement requirement. Certainly, there can be no single "proper length" for stating a particular claim. The level of factual detail will vary with the complexity of the claim asserted. Moore, *supra*, § 8.04[1][d]. But a district court acts within its discretion when it dismisses an excessively prolix and overlong complaint, particularly where a plaintiff declines an express invitation to better tailor her pleading. For instance, in *Westinghouse*, we concluded that the District Court properly exercised its discretion in dismissing counsel's 240-page, 600-paragraph complaint that included a 50-plus-page "overview" of the allegedly wrongful conduct. 90 F.3d at 703. We observed that the *Westinghouse* complaint was "unnecessarily complicated and verbose." *Id.* And notably, the District Court had not dismissed the complaint outright, but rather directed the plaintiffs to submit a third amended complaint "containing only those allegations relevant to what were, in the court's view, the remaining viable claims." *Id.* We viewed the District Court's actions as "mak[ing] a tremendous amount of sense" given the state of the original complaint and Rule 8's goal of

41

encouraging litigation on the merits, even though the plaintiffs had declined the opportunity to amend. *Id.*

Next, we turn to the "plain" statement requirement, which prompts us to ask whether, liberally construed, a pleading "identifies discrete defendants and the actions taken by these defendants" in regard to the plaintiff's claims. *See Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (per curiam). Naturally, a pleading that is so "vague or ambiguous" that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8. *Schaedler*, 370 F.2d at 799; *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). And, of course, "[t]he dismissal of a complaint on the ground that it is unintelligible is unexceptional" because it cannot satisfy the basic notice function of a pleading. *Ruby Foods*, 269 F.3d at 820 (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

A statement of a claim may be "plain" even if it does not include every name, date, and location of the incidents at issue. *See Frazier*, 785 F.2d at 68 ("While plaintiffs may be expected to know the injuries they allegedly have suffered, it is not reasonable to expect them to be familiar at the complaint stage with the full range of the defendants' practices under challenge."); *see also Harnage*, 916 F.3d at 142 ( "[T]he failure to allege specific dates does not necessarily run afoul of Rule 8, especially where . . . the plaintiff lacks ready access to his medical records."). Missing details or superfluous material do not necessarily render a complaint unintelligible. Indeed, even if it is vague, repetitious, or contains extraneous information, a pro se complaint's language will ordinarily be "plain" if it presents cognizable legal claims to which a defendant can respond on the merits. *Alston*, 363 F.3d at 234; *Bethea v. Reid*, 445 F.2d 1163, 1165 (3d Cir. 1971); *see also Ruby Foods*, 269

42

F.3d at 820 (pro se complaint, though prolix, "appears to state a claim that would withstand challenge under Fed. R. Civ. P. 12(b)(6)"); *Simmons*, 49 F.3d at 87–88 (concluding that "[t]hough perhaps some details [were] lacking" and "extraneous details" were included, "it [was] evident that defendants understood the nature of Simmons's claims" based on their response to it).

Paying heed to the foregoing principles, the Seventh Circuit has held that a district court abuses its discretion when a pro se complaint is dismissed "merely because it contains repetitious and irrelevant matter," so long as that "disposable husk [surrounds] . . . a core of proper pleading."[27] *Ruby Foods*, 269 F.3d at 820. Similarly, the Second Circuit has held that dismissal of pro se complaints "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin*, 861 F.2d at 42.

## C.

It is apparent that the District Court abused its discretion in ordering dismissal here. The claims in Garrett's pro se FAC are sufficiently "short" and "plain," and the FAC adequately puts a number of the defendants on notice of Garrett's claims and makes a sufficient showing of enough factual matter (when

---

[27] The Seventh Circuit recognized that this proposition is not without limits, implicitly acknowledging that burying a claim in an excessively lengthy complaint may violate Rule 8. It therefore indicated its agreement with our Court's dismissal of the 240-page complaint in *Westinghouse*. *Ruby Foods*, 269 F.3d at 821.

taken as true) to plausibly suggest that Garrett can satisfy the elements of his § 1983 claims. *See Phillips*, 515 F.3d at 235.

Obviously, the 15-page FAC is drastically shorter than the 240-page complaint that was properly dismissed in *Westinghouse*, and shorter than even the 20-page complaint that survived dismissal in *Ruby Foods*. It is apparent that Garrett followed the Magistrate Judge's instruction that his TAC had been too lengthy (the FAC is less than half the TAC's length because Garrett trimmed approximately 20 pages from it).

Under § 1983, a plaintiff must plead a deprivation of a constitutional right by a person acting under the color of state law. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997). In the FAC, Garrett claims that the Corrections Defendants violated the Constitution by being deliberately indifferent to his serious medical needs and by retaliating against him. Garrett provides factual allegations setting forth particularized descriptions of actions taken by several of the individual defendants that plausibly support these claims, including:

- "On April 1, 2014, Plaintiff was being escorted by another inmate along the walkway, when Sgt. Woomer and Unit Manager Defelice told the inmate not to help or assist the Plaintiff. . . . As Plaintiff attempted to comply and return without any assistance, Plaintiff eventually collapsed, striking the ground hard. Sgt. Woomer witnessed this, and told plaintiff to 'crawl like a dog.'" JA 353.

- "On April 24, 2014, 8:00 pm, Officer Hunt used Official Oppression and the intimidation of a

witness. Officer Hunt called plaintiff [racial slur] and threatened to block card him if he was seen having an inmate assist him." JA 355.

- "On May 11, 2014. Plaintiff had experienced chest and back pain and could not stand for count. Plaintiff informed Block C.O. McClellan, who in turn notified the medical department. It took them 75 mins to respond. Nurse Rich arrived with a wheelchair at FA-Unit cell 6. Nurse Rich stated that they were going to intentionally alter his medical file, and he would be returned to the housing unit." JA 354.

- "On May 11, 2014 Plaintiff's medical file was altered, ECG reports were destroyed by Nurse Barnes. Plaintiff suffered disregard for his health and safety as well as the ignoring of a serious medical need had been shown." JA 355.

- "On June 15, 2014 between 1:30 and 2:00 pm, Sgt. James came to cell 6 and opened the door while Plaintiff was sleeping. Plaintiff's cell mate . . . witnessed Sgt. James slap Plaintiff in the chest as he was sleeping. Sgt. James['s] demeanor and behavior was vindictive, and he told the Plaintiff the misconduct from earlier. This action was caught on surveillance cameras aimed at cell 6." JA 355.

- "On July 9, 2014 Plaintiff suffered a fall in the all-metal accessible shower because he was denied his assistive devices. Officers McClellan, Hunt, Sgt. Young, and unit manager Barber did not allow

45

Plaintiff to use the handicapped accessible shower facility." JA 355.

Notwithstanding their argument that Garrett's FAC was deficient, the Corrections Defendants nevertheless respond to the merits of several of his claims in their appellate brief. They argue, for instance, that Woomer and DeFelice "cannot be faulted for following doctor's orders," Hunt and Woomer cannot be held liable because insults and epithets are "not actionable under Section 1983," and Nurse Barnes can be accused of nothing more than medical malpractice in administering the EKG. Corr. Def. Supp. Br. 21–23. Similarly, they contend that Garrett's fall in the shower does not plausibly rise to the level of a constitutional violation because it is "actionable, at best, as a slip and fall negligence case sounding in tort." *Id.* at 24. Without addressing the validity of the Corrections Defendants' arguments,[28] we believe their brief demonstrates that it was possible to understand and engage with Garrett's claims on their merits. *See Ruby Foods*, 269 F.3d at 820 (suggesting that any claim that may survive a Rule 12(b)(6) challenge meets the pleading requirements of Rule 8).

---

[28] The Corrections Defendants did not move in the District Court to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and never otherwise presented these merits-based arguments. Accordingly, we will not address them in the first instance on appeal. *See Tri-M Group, LLC v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011) (generally, an argument not presented to a district court in the first instance will not be considered).

We also observe that two of these claims (the June 15, 2014 slap on the chest and the July 9, 2014 fall in the shower) were administratively exhausted within the prison grievance system before Garrett filed the FAC. Garrett used similar descriptions in the FAC to those in his prison grievances. Tellingly, the Grievance Officer was able to discern Garrett's claims and to pass upon their merits. When the same claims appeared in Garrett's FAC, the Corrections Defendants should have likewise been able to understand them and formulate a substantive response.

The Corrections Defendants contend that we should uphold the District Court's Rule 8 dismissal because Garrett previously had been given several opportunities to amend. They argue that Garrett is "incapable or not willing to abide by the Court's instructions." Corr. Def. Supp. Br. 26. We disagree. It is apparent that Garrett made a genuine effort to revise his FAC to respond to the Magistrate Judge's critique of the TAC. This is simply not a case in which leave to amend was previously given and the successive pleadings "remain prolix and unintelligible." *See Salahuddin*, 861 F.2d at 42.

D.

In conclusion, there are claims in Garrett's pro se FAC against the Corrections Defendants that satisfy the "short and plain statement" requirement. Fed. R. Civ. P. 8(a)(2). While the complaint is far from perfect, we cannot agree with the Magistrate Judge's assessment, adopted by the District Court, that "Plaintiff's factual and legal allegations are, to a substantial extent, incomprehensible" and that the FAC contains "virtually no detail as to who did what and when." JA 22.

47

We are always mindful that the abuse of discretion standard of review is highly deferential. And we are not unsympathetic to the difficulties and frustrations the Magistrate Judge experienced in managing a case that involved various iterations of a complaint. Yet we simply cannot conclude that the District Court's sweeping dismissal of all the claims in the FAC was a proper exercise of discretion. We will therefore vacate and remand the matter for further proceedings.[29]

---

[29] Our conclusion that the District Court erred by dismissing the FAC under Rule 8 should not be construed as a determination on our part that there are no appropriate bases for dismissal of some or all of the claims against the Corrections Defendants in the FAC. For instance, if certain defendants were not timely served, the claims against them might properly be subject to dismissal under Rule 4(m). In addition, there may be valid arguments that Garrett has failed to state a claim against some or all of the Corrections Defendants, and so dismissal under Rule 12(b)(6) could be warranted. Finally, it is possible that Rule 8 might be employed surgically as to certain specific defendants if no "short and plain" statement of a claim is discernable. Yet here, because it was an abuse of discretion to dismiss *all* of the claims against the Corrections Defendants for failure to comply with Rule 8 when it is apparent that some claims satisfy the rule, we will vacate the dismissal and remand to the District Court to carefully consider those possibilities if and when they have been properly presented and briefed by the parties.

## IV.

For all of the reasons discussed, we will vacate the dismissal of the claims against the Medical Defendants for failure to exhaust administrative remedies, and the dismissal of the claims against the Corrections Defendants for failure to comply with Rule 8.  We will remand the matter for further proceedings consistent with this opinion.